JOHN C. REHMANN et al., Appellants, v. CITY OF DES MOINES et al., Appellees.

**CONSTITUTIONAL LAW:** **Property and Rights Therein—Prohibition**
1 **on Building.** The right of a city to restrict and regulate the right of the owner of property to build thereon does not embrace the right to arbitrarily prevent the improvement of the property.

**MUNICIPAL CORPORATIONS:** **Building Permits—Revocation of Permit.**
2 **mit.** A building permit issued by a city council on proper plans, duly approved by the city authorities, on which the permittee has to some extent acted, is not revocable by the council on the grounds that the building and the business carried on therein would be objectionable to the residents of the neighborhood.

Headnote 1: 28 Cyc. p. 736. Headnote 2: 26 Cyc. p. 748.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

JUNE 25, 1925.

ACTION in equity, to enjoin the defendant officers of the city of Des Moines from interfering with plaintiffs in the construction of a brick store building on the northeast corner of Thirty-ninth Street and University Avenue, in the city of Des Moines. The facts are fully stated in the opinion. Decree dis-

missing plaintiffs' petition, and they appeal.—*Reversed and remanded.*

*James C. Hume,* for appellants.

*John J. Halloran, Reson S. Jones, Chauncey A. Weaver,* and *Paul Hewitt,* for appellees.

STEVENS, J.—The questions presented for decision upon this appeal arise out of the refusal of the court below to permanently enjoin appellees, who are the mayor and councilmen of the city of Des Moines, from interfering with the erection of a store building at the corner of Thirty-ninth Street and University Avenue, in the city of Des Moines, by appellants under a permit previously issued by the department of streets and public improvements of said city and revoked by the action of the city council a few days later, and the denial of the prayer of their petition for a writ of mandamus to compel the issuance of a new building permit as alternative relief.

Appellants, who were the owners of a tract of land situated at the northeast corner of University Avenue and West Thirty-ninth Street, on or about March 12, 1924, entered into a contract with one Vortruba, to sell the same to him, and, as a part of the consideration therefor, agreed to erect a one-story brick store building thereon. The plans and specifications for the building were submitted to the proper officer of the defendant city and approved by him. On April 1st, a permit in the usual form, granting appellants permission to erect a building according to the plans and specifications filed with the city, was issued. On April 3d, the city council attempted to revoke the said permit, and directed the city legal department to immediately notify appellants of its action and to tender back the fee paid therefor. Immediate action was taken by the legal department; and, on the same day, appellants were notified to cease the work of excavation, already begun, for the building, and that the permit issued to them had been revoked. A few days later, this action was commenced, to restrain appellees from interfering with the construction of the building in accordance with the permit issued therefor. At or about the close of the

trial, appellants filed an amendment to their petition, praying in the alternative for a writ of mandamus to compel appellees to issue a new permit for the erection of the building. The petition was dismissed by the court for want of equity, and the costs were taxed to appellants.

The defense set up by appellees is that the permit was obtained by fraud, and that appellants were guilty of such inequitable conduct as to estop them to seek the aid of a court of equity, and that, at most, the permit issued was a mere license, revocable at the pleasure of the officer issuing the same. It is established by a fair preponderance of the evidence that the superintendent of the department of streets and public improvements of the defendant city was reluctant to grant the permit, upon the grounds that the locality described is in the midst of an exclusive residential district, and that the erection of a brick store building therein would certainly provoke the opposition and hostility of adjacent and surrounding property owners. Mr. Mitchell, having charge of the issuance of permits for building purposes, testified that the application therefor was finally granted upon the representations and promises of appellants that, if substantial opposition to the erection of the building developed on the part of other property owners, they would desist, and hold the city harmless. The witness further testified that he requested one of appellants to ascertain definitely the sentiment of the community before the permit was issued, but that he reported that he had been unable to secure an interview with any considerable number of the other property owners, and that it was impracticable for him to secure the desired information. The further claim is made that appellants also asked for the permit for the purpose of meeting their agreement with Vortruba.

As soon as the work of excavating the ground for the construction of the building commenced, the city council was met with a storm of protests; and written objections, numerously signed, were promptly filed. The action of the city council in attempting to revoke the permit was the result of these objections and protests against the invasion of the territory by any firm of business activity. It appears that there are business

houses on University Avenue at Thirty-fifth and at Forty-second Street.

As the ultimate question for decision, upon any theory of the case, is the right of appellants to a permit to erect a store building at the place mentioned, we shall dispose of all the propositions argued together. At the outset of this discussion, we desire to call attention to a few provisions of the statute enacted for the benefit of property owners situated as the objectors are in this community, and now in force.

**1. CONSTITUTIONAL LAW: property and rights therein: prohibition on building.**

Authority is conferred by the provisions of Chapter 324 of the Code of 1924, upon cities, towns, and cities acting under the commission plan of government, "to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence, or other purposes." Section 6452.

"For any or all of said purposes the local legislative body, hereinafter referred to as the council, may divide the city or town into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this chapter; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair, or use of buildings, structures, or land. All such regulations and restrictions shall be uniform for each class or kind of buildings throughout each district, but the regulations in one district may differ from those in other districts." Section 6453.

It is further provided by Section 6454 that:

"Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the street; to secure safety from fire, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements."

For the purpose of carrying out the provisions of this chap-

ter, provision is made for the appointment of a zoning commission, whose powers and duties are thereby prescribed. Authority is also conferred upon cities of the first class, including cities under the commission form of government, to designate and establish restricted residence districts within the limits of such municipalities.

It is, of course, fundamental in the law of real property situated within the limits of cities and towns, that the owner thereof may erect any structure or building thereon, or use the same for any lawful purpose that he may see fit, subject only to such restrictions and regulations as the municipality may, in the exercise of the police power, by proper enactment reasonably impose. The authority delegated by the statute is broad and ample for all reasonable requirements. The police power, which has never been quite adequately defined, and which, as suggested by the late Justice Weaver in *City of Des Moines v. Manhattan Oil Co.*, 193 Iowa 1096, is perhaps happily undefinable, is, in matters of the character before us, bounded only by constitutional limitations. Theoretically at least, there can be no conflict between the exercise of purely police power and constitutional inhibitions, as the legitimate scope of the one ends where the other begins. So long, therefore, as municipal bodies confine their enactments providing for the regulation and control of the kind or nature of buildings that may be erected upon property privately owned, and the use to which the same shall be put, within the proper limits of such power, they do not violate the property rights of the individual. The limit imposed is that the requirements, whatever they may be, must be reasonable, and for the protection of property, the public morals, or the welfare of the inhabitants of such municipality.

For example, ordinances fixing fire limits and prohibiting the construction of buildings therein, or the repair thereof, by the use of combustible materials, are universally sustained. *City of Keokuk v. Scroggs,* 39 Iowa 447; *Lane-Moore Lbr. Co. v. City of Storm Lake,* 151 Iowa 130; *City of Des Moines v. Manhattan Oil Co.,* supra; *Morgan v. Haley,* 107 Va. 331 (13 L. R. A. [N. S.] 732).

Likewise, it has been held that, in the exercise of its police power, the state may impose regulations which limit the height

of buildings to be erected in cities, where same is reasonably necessary for the protection of the public health, safety, or welfare (*Piper v. Ekern,* 180 Wis. 586 [34 A. L. R. 32]); and that cities may require the securing of building permits (*State v. Holcomb,* 68 Iowa 107).

On the other hand, it has been held that cities may not declare a retail grocery store to be a nuisance *per se,* or prohibit the erection thereof in a residential district solely because it offends the æsthetic taste of those residing in the vicinity. *People v. City of Chicago,* 261 Ill. 16 (103 N. E. 609). To the same effect see *Fitzhugh v. City of Jackson,* 132 Miss. 585 (33 A. L. R. 279).

We have referred to the above statutes and rules for the purpose of indicating something of the power of municipalities to make and enforce reasonable restrictions and regulations in

2. MUNICIPAL CORPORATIONS: building permits: revocation of permit.

the matter of the erection and repair of buildings. The evidence does not show, nor is it claimed by appellees, that appellants were threatening or attempting to erect a building at a place or of material prohibited by the ordinances of the city, or that same will be detrimental to the public health. The claim is made, however, that the traffic conditions that will arise out of the use of the premises for a grocery store will result in danger to the public. The sole ground of complaint is that the permit was obtained by fraud, and that relief should not be granted in equity to appellants because thereof. It cannot be the law that city councils exercise unlimited discretion in the matter of granting, refusing, or revoking building permits. Any attempt to confer such authority would be void, because in violation of constitutional guaranties.

It is no doubt the general rule that a mere license may be revoked at the pleasure of the licensor. *Borck v. State* (Ala.), 39 So. 580; *Stone v. Fritts,* 169 Ind. 361 (82 N. E. 792); *Rodefer v. Pittsburg, O. V. & C. R. Co.,* 72 Ohio St. 272 (74 N. E. 183); *Littleton v. Burgess,* 14 Wyo. 173 (82 Pac. 864); *Dawson v. Western Md. R. Co.,* 107 Md. 70 (68 Atl. 301); *Clark v. Wall,* 32 Mont. 219 (79 Pac. 1052). But where money has been expended in reliance upon the license, the rule has been frequently held to be otherwise. *Ruthven v. Farmers Co-operative Cream-*

*ery Co.,* 140 Iowa 570; *Green v. Crain,* 185 Iowa 1086; *Wickersham v. Orr,* 9 Iowa 253; *Patterson v. City of Burlington,* 141 Iowa 291; *Kipp & Kendall v. Coenen & Bechtell,* 55 Iowa 63; *City of St. Louis v. Dorr,* 136 Mo. 370 (37 S. W. 1108); *Harper v. Mayor of Jonesboro,* 94 Ga. 801 (22 S. E. 139); *City of Lowell v. Archambault,* 189 Mass. 70 (1 L. R. A. [N. S.] 458).

Appellants, in addition to the fee paid the city for the permit, appear to have incurred some expense in making a partial excavation for the basement to the proposed store building.

A building permit issued by a municipality in pursuance of restrictions and regulations in force is manifestly something more than a mere license revocable at the will of the licensor. The requirement that a permit be obtained before proceeding with the erection of the building was invoked only because of the right of the city, in the proper and reasonable exercise of the power delegated to it, to enact regulations and restrictions governing the kind of building and character of material to be used therein, to be erected within its limits. The authority delegated to municipalities to impose building restrictions and regulations does not carry with it the authority to arbitrarily prevent the owner from improving his property. Independent of the power to regulate and to enact restrictions, the owner of the property has the absolute right to improve it and use it in any lawful way or for any lawful purpose. In other words, the authority conferred upon the municipality is to restrict and regulate, and not to prohibit. Viewed in this light, building permits, as stated, are something more than mere licenses.

The plans and specifications for the building were approved by the proper officer; and the only reluctance on the part of the member of the city council having charge of the issuing of building permits to grant the same was that he anticipated opposition on the part of those residing in the community, to the erection of the business house therein. The only fraud alleged by the city was the promise of appellants to either procure the consent of the property owners or desist from making the improvement. No claim is made that it was discovered by the city council, subsequent to the issuance of the permit, that the plans and specifications were defective, or did not comply with the regulations of the city, or that the building would, when erected, create a

nuisance. The permit having been issued upon a full showing by appellants of the nature and character of the building and the use to be made thereof, and the approval thereof by the proper officer having been obtained, it is our opinion that the permit was not revocable upon the grounds alleged. We do not deem it necessary to go more fully into the question, or to consider the prayer of the petition for a writ of mandamus to compel the issuance of a new permit. It is sufficient that a permit which was irrevocable upon the grounds set up by the city has already been issued. We conclude, therefore, that a decree should have been entered in the court below in favor of appellants. The judgment and decree entered is reversed, and the cause remanded for decree in harmony herewith.—*Reversed and remanded.*

FAVILLE, C. J., and EVANS and VERMILION, JJ., concur.