CALL BOND AND MORTGAGE COMPANY, a corporation, Appellee, v. CITY OF SIOUX CITY et al., Appellants, SAM G. PICKUS et al., Intervening Defendants, Appellants.

No. 42742.

February 12, 1935.

H. C. Harper and John D. Beardsley, for appellant city of Sioux City.

Sam G. Pickus and Griffin & Griffin, for intervening defendants and appellants.

Corbett & Corbett, for appellee.

Hamilton, J.—Call Bond & Mortgage Company, a corporation, of Sioux City, Iowa, is the owner in fee simple of lots 1, 2, and 3, in block 66, Pierce's addition to Sioux City, Woodbury County, Iowa. On the 13th day of September, 1933, the appellee applied to the proper city official of Sioux City for a permit to erect upon the above-described property a commercial greenhouse. At that time there was in full force and effect zoning ordinance of Sioux City, known as Ordinance No. O–1382, enacted under and by virtue of the provisions of the statutes of the state of Iowa now embraced in chapter 324 of the 1931 Code of Iowa (Sec. 6452 et seq.). It is conceded that the property of appellee above described is located in what is designated in said ordinance as "A" residence district.

The provisions of this ordinance necessary to a determination of this case are as follows:

"Sec. III. 'A' *Residence District.* In the 'A' District no buildings or premises shall be used, and no buildings shall be hereafter erected or structurally altered, save as provided in this ordinance, except for one or more of the following *uses*:  *  *  *

"8. *Nurseries and greenhouses.* The exterior design of the front of the buildings shall be in harmony with the exterior design of the dwellings generally in the district in which the proposed nursery or greenhouse is located and the grounds in front of such premises shall be landscaped and planted to shrubbery and so maintained.

"9. *Accessory buildings, including one private garage or one private stable.* The location of all private stables shall be subject to the regulations of the Health Department of the City.

"10. *Uses* customarily incidental to any of *the above uses* when located on the same lot not involving the conduct of a business on the premises." (Italics are ours.)

Paragraph 27 of section I: "Business, as used in Paragraph 10 of Section III of the Zoning Ordinance, is defined as that employment which occupies the time, attention and labor of men or women for the purpose of a livelihood or profit."

The ordinance also provides under section XI for a board of adjustment which is authorized by statute and stipulates among other things:

"*Appeal:* Appeal to the Board of Adjustment may be taken within thirty (30) days by any person or persons aggrieved or by any officer, department, board or bureau of the City of Sioux City, affected by any decision of the Building Inspector.

"*Jurisdiction:* The Board of Adjustment shall have the following powers:

"1. To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by the Building Inspector in the enforcement of this ordinance."

Here follows a long list of powers conferred upon the board of adjustment, set out in eleven different paragraphs. Then it provides:

"In exercising the above mentioned powers such Board may reverse or affirm wholly or partly, or may modify the order, re-

quirement, decision, or determination appealed from, and may make such order, requirement, decision, or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken."

Section XVIII provides:

"*Enforcement*: It shall be the duty of the Building Inspector to enforce the provisions of this ordinance and enforce such rules, regulations and decisions, as shall be adopted by the Board of Adjustment."

It is not claimed by any of the parties to this litigation that the ordinance does not conform to the statute, nor is it claimed that the zoning ordinance is unconstitutional. Both appellants and appellee submit the case upon the theory that the zoning ordinance of Sioux City, as introduced in evidence in this case, is a valid, existing, municipal law.

On September 13, 1933, F. E. Colby, building inspector, issued a permit to Call Bond & Mortgage Company for the "erection of a brick and glass greenhouse on the above described property at a cost of $4,700.00." Plans and specifications were submitted to the building inspector at that time and were approved by him, and bear his stamp of approval. The permit is signed, "F. E. Colby, Building Inspector." On the 15th day of September, 1933, just two days later, the city council met and passed the following resolution, designated as "Resolution No. P-6775":

"A Resolution directing the Building Inspector to recall Building Permit No. 16880 issued to the Call Bond & Mortgage Company, for erection of a brick and glass greenhouse to be located on Lots 1, 2, 3, Block 66, Pierce's Addition;

"*Whereas*, The Building Inspector has erroneously issued a building permit, No. 16880, to the Call Bond & Mortgage Company for the erection of a brick and glass greenhouse on Lots 1, 2, 3, Block 66, Pierce's Addition, being the Southwest corner of 33rd and Jackson Streets, and

"*Whereas*, said permit should not have been issued,

"*Now therefore be it resolved by the city council of the city of Sioux City, Iowa,* that the Building Inspector of said city is hereby ordered and directed to revoke said building permit and im-

mediately notify said Call Bond & Mortgage Company of the revocation thereof, and

"*Be it further resolved* that said Building Inspector is hereby authorized and directed to return the permit fee of $3.50 paid by said Call Bond & Mortgage Company at the time that notice of revocation of permit is served upon said Call Bond & Mortgage Company.

"W. D. Hayes, Mayor.

"Passed September 15, 1933.
"Approved September 15, 1933.
"Attest: Edgar V. Moon, City Clerk."

In compliance with said resolution, the building inspector on said date notified Call Bond & Mortgage Company of the action of the council revoking the permit and refunded the $3.50 filing fee. The appellee by letter returned the check of $3.50 and denied the right of the council and the building inspector to revoke the building permit. A few days thereafter, plaintiff and appellee commenced this action, setting up the facts as herein set forth and alleging that following the granting of said permit by the building inspector, it contracted to purchase a portion of the material necessary for the construction of said greenhouse, and averring that it will suffer irreparable damage if not permitted to construct the same, that said city through its officers will attempt to prevent the construction of said greenhouse, and that it has no adequate remedy at law, and praying for a writ of injunction.

The defendant city filed its answer, alleging that said permit was issued without authority of the said building inspector and was wholly void and without force or effect, and in a separate division of the answer averring that if said permit had any validity, the same was thereafter validly revoked by resolution of the city council and by action of the building inspector, setting up a copy of the resolution of the council. Defendant city further alleged in another division of its answer that certain persons, claiming to be aggrieved by the action of the building inspector in granting said permit, had taken and filed an appeal with the board of adjustment, as provided by said ordinance, and that the plaintiff and appellee had failed to appeal as provided by said ordinance from the action of the building inspector in revoking said permit, and that the court is without jurisdiction until after decisions of said

board as provided by said ordinance; and said defendant prayed that the petition of the plaintiff be dismissed.

The persons thus appealing from the order granting said permit are the same persons who are named as interveners in the caption of this case. Said interveners, after perfecting their appeal to the board of adjustment, also filed their petition of intervention and set up substantially the same allegations that were contained in the answer of the city; in addition thereto, they alleged that the plans and specifications do not conform to the rules and regulations set forth in said ordinance, and that the construction and operation of a commercial greenhouse, as contemplated by plaintiff and appellee, would constitute a nuisance. In answer to this petition of intervention, the appellee admitted the filing of the appeal on the part of interveners, but denied that the court was without jurisdiction by reason of the filing of said appeal for the reason that said appeal was not filed until after the filing of plaintiff's petition herein, and alleged that said board of adjustment was without jurisdiction to hear said appeal.

On the issues thus joined, trial was had to the court, with the result that the writ was granted. There is very little if any dispute over the facts in the case.

I. It is claimed by the appellants that the building inspector was without right or authority to grant the permit for the reason that such permit was in violation of the zoning ordinance of said city, their contention being that while the zoning ordinance provides for the construction of nurseries and greenhouses, as set out in paragraph 8 of section III of said ordinance, yet, they argue, paragraph 10 of section III limits the construction of such greenhouses and nurseries to private greenhouses in connection with residence properties and does not include a commercial greenhouse. They base their contention on the following:

"10. Uses customarily incidental to any of the above uses when located on the same lot *not involving the conduct of a business on the premises*."

Whether or not this language is susceptible to the construction claimed by appellant will, we think, admit of some doubt. Paragraph 10 deals with uses customary and incidental to the uses already granted, the *uses already granted* being nurseries and greenhouses, and paragraph 10 refers to *additional uses* which are

customarily incidental to *uses of nurseries and greenhouses,* and, limits the location of the same to the same lot and also bars any additional uses that involve the conduct of a business on the premises.

The testimony shows that there are in this class A residence district other greenhouses, but none of them is in a thickly populated residence district. This class A district covers a large area and some of the territory is used for farming and truck gardening, but is all classified in the zoning ordinance as class A residence dis-·trict. The evidence further shows that there are no business houses of any kind located within several blocks of the lot upon which the appellee proposes to erect its commercial greenhouse. However, in view of the apparent ambiguity contained in this paragraph 10 of section III of the ordinance, there is sufficient ground for debate that it cannot be claimed that the building inspector in either granting or revoking said permit acted arbitrarily or illegally, and while it may be (but which we do not determine) that the board of adjustment, under section 6463 of the 1931 Code of Iowa, and paragraph 3 of section XI of said zoning ordinance is possessed of the power to refuse to permit the erection of a greenhouse on this particular lot situated as it is, adjacent to palatial residences extending for blocks in each direction, yet in the first instance, with nothing save the ordinance itself to guide the inspector, his action in granting the permit cannot be said to be without right or authority to grant the same.

▮▮ II. This brings us to appellants' second contention, to wit, that the permit was validly revoked. By the weight of authority and under our own holdings, a municipal building permit may not arbitrarily be revoked, and especially is this true where on the faith of it the owner has incurred material expense.

. A reading of the cases will disclose that almost universally, where the courts have denied the power of the municipality to revoke a building permit, it has been held that a vested right had been acquired by the owner by reason of the fact that work had actually commenced or money had been expended for material prior to the time of the revoking of the permit, and our own cases seem to turn on this same proposition.

In the case of City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, at page 1102, 184 N. W. 823, 826, 188 N. W. 921, 23

A. L. R. 1322, in an opinion by Justice Weaver, in which the action of the city in revoking a permit was upheld, we said:

"It is also contended that the city council, having once adopted a resolution granting a building permit, is without power or authority to rescind it. * * * We are disposed to hold that the adoption of the resolution to grant the building permit did not have the effect to confer upon the property owner or his lessees a vested right which could not be canceled or recalled, under the circumstances here shown. The lessor had not yet acquired title to the property, and did not acquire it until after the permit had been rescinded. The proposed filling station had not been constructed, though it is claimed certain material intended for that use had been deposited there. When the application for permit was made, there was then pending and undisposed of before the council, as the applicant well knew, the petition of the property owners within this area to make it a restricted residence district; and if the council, having adopted the resolution to grant the permit under such circumstances, concluded it had acted inadvertently or improvidently, or without proper regard for the rights of the petitioners for a restricted district, and rescinded the resolution with reasonable promptness, we are of the opinion it did not exceed its authority or abuse its discretion."

This question was again considered in the case of Rehmann v. City of Des Moines, 200 Iowa 286, beginning at page 291, 204 N. W. 267, 270, 40 A. L. R. 922. Quoting from the opinion by Justice Stevens:

"It is no doubt the general rule that a mere license may be revoked at the pleasure of the licensor. [Citing a large number of cases.] But where money has been expended in reliance upon the license, the rule has been frequently held to be otherwise. [Citing numerous cases.] Appellants, in addition to the fee paid the city for the permit, appear to have incurred some expense in making a partial excavation for the basement to the proposed store building. A building permit, issued by a municipality in pursuance of restrictions and regulations in force, is manifestly something more than a mere license revocable at the will of the licensor. The requirement that a permit be obtained before proceeding with the erection of the building was invoked only because of the right of the city, in the proper and reasonable exercise of the power delegated to it,

to enact regulations and restrictions governing the kind of building and character of material to be used therein to be erected within its limits. The authority, delegated to municipalities to impose building restrictions and regulations, does not carry with it the authority to arbitrarily prevent the owner from improving his property. Independent of the power to regulate and enact restrictions, the owner of the property has the absolute right to improve it and use it in any lawful way or for any lawful purpose. In other words, the authority conferred upon the municipality is to restrict and regulate, and not prohibit. Viewed in this light, building permits, as stated, are something more than mere licenses. * * * The only fraud alleged by the city was the promise of appellants to either procure the consent of the property owners or desist from making the improvement. No claim is made that it was discovered by the city council, subsequent to the issuance of the permit, that the plans and specifications were defective or did not comply with the regulations of the city, or that the building would, when erected, create a nuisance. The permit having been issued upon a full showing by appellants of the nature and character of the building, and the use to be made thereof, and the approval thereof by the proper officer having been obtained, it is our opinion that the permit was not revocable *upon the grounds alleged*." (Italics are ours.)

In the case of Dainese v. Cooke, 91 U. S. 580, 23 L. Ed. 251, the court refused to uphold a municipality in revoking a permit and in that case the building had so far progressed that the builder was ready to put on the roof when the demand was made for its removal. In the case of Pratt v. City and County of Denver, 72 Colo. 51, 209 P. 508, 509, the evidence showed "that plaintiff, acting in reliance on the permit, incurred considerable expenditure for work, labor, and material necessary for the construction of the building, prior to the time of the attempted revocation of the permit. Under these circumstances it must be held that the city is estopped to claim that the permit has been revoked."

Quite an extensive brief will be found in 40 A. L. R. at page 928, and a reading of the cases therein digested will reveal quite universally the fact of the expenditure of money and labor by the owner which is held by the court to give the owner a vested right which the officer granting the permit had no power arbitrarily to divest by revoking the permit.

An examination of the record in this case reveals the fact without dispute that the permit was granted on the 13th day of September, 1933, and on the 15th day of September, it was revoked and the $3.50 license fee tendered back to appellee; that in the meantime, a representative of appellee had met a Mr. Mahoney on the street in front of the post office building and ordered 5,000 bricks. No definite price was set and none of the bricks had been delivered, and no part of the purchase price paid, and the contract for the purchase of the bricks was in no manner performed. Mr. Mahoney was informed on the second day that the council had stopped the appellee from constructing the building. He had taken no action in reference to the order except to write down on a tab in the office a memorandum of the order. This was on September 14th. This order was not signed by anyone—it was merely an indefinite reservation to protect the appellee against the advance in price in the future. There were 5,000 bricks already on hand. No order was made for more as a result of the conversation on the street. Some time in April the appellee had some stakes driven at the corners of the proposed building site. This was long after the permit had been revoked, and after the lawsuit had been started, and the appellee stated that the stakes had no value.

Can it be said under this evidence that the appellee had acquired a vested right or interest of which the city could not deprive it by revoking the permit? And can it be said that the action of the council and the building inspector in revoking the permit two days after it was issued and before the status quo of the appellee's property had been changed in the least, that the city was without authority to revoke, or that its action in revoking the permit was arbitrarily done? We can see no reason either in law or equity for so holding. On the contrary, under the circumstances disclosed by the evidence in this case, we find that the action of the city council and building inspector in revoking the permit was a valid exercise of the police power vested in such officials under the ordinances of the city and the statutes of the state of Iowa.

Having thus determined that the action of the city council and the building inspector in revoking said permit was not arbitrarily and illegally done, what were the rights of the appellee?

III. It is the contention of the appellants that the court was without jurisdiction for the reason that the appellant interveners had appealed to the board of adjustment from the ruling of

the building inspector in granting said permit, within the time allowed by the ordinance and which appeal was still pending, and for the further reason that the appellee had not appealed to the board of adjustment from the action of the building inspector in revoking said permit as provided in said zoning ordinance, within thirty days from the revocation thereof.

It will be noticed that under chapter 324 of the Code (Sec. 6458 et seq.), ample provision is made for the creation of a board of adjustment, and for appeals to the board, which appeals "may be taken by any person aggrieved or by any officer, department, board, or bureau of the municipality affected by any decision of the administrative officer", (Sec. 6461) and that on appeal the board of adjustment shall have the power "to hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this chapter or of any ordinance adopted pursuant thereto." (Sec. 6463.) The zoning ordinance introduced in evidence in this case is carefully drawn in conformity with the statute, and covers, generally and specifically, all the provisions of the statute, and provides that in the exercise of its appellate powers, "such Board may * * * reverse or affirm, wholly or partly, or may modify the order, requirement, decision, or determination appealed from and may make such order, requirement, decision, or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken." ·

We do not find that this precise legal question has heretofore been presented to this court. The case of Zimmerman v. O'Meara, 215 Iowa 1140, 245 N. W. 715, 718, cited in appellee's brief is not in point. In that case, which was an action in equity brought by the plaintiffs to enjoin the defendant from changing a single dwelling house into a duplex house contrary to the zoning ordinance, the board of adjustment by resolution attempted to make an exception, and the court held that the action of the board of adjustment was wholly without legal authority, and that the property owners had a right to bring the action by way of injunction and were not required to resort to a writ of certiorari because they did not discover the action of the board of adjustment until more than thirty days after the resolution of the board had been adopted and the permit granted. In that case application was first made to the building inspector and he rejected it. Thereupon the property owners

proceeded to take an appeal to the board of adjustment and the board of adjustment passed a resolution granting permission to make the change from a single dwelling house into a duplex house for two families. We held in that case:

" 'If the reasonableness of the classification established by the ordinance or of the exception or variance granted by the board of adjustment is fairly debatable, and not clearly arbitrary, the judgment of the local authorities will not be disturbed by the courts.' " Citing Zahn v. Board of Public Works, 274 U. S. 325, 47 S. Ct. 594, 71 L. Ed. 1074.

Quoting further:

" 'But the statute does not by language or inference, confer arbitrary power upon the board. On the contrary, it lays down conditions and limitations within which the board must confine itself. The power of the board is to grant such exceptions and variances in specific cases *as will bring them within, not to take or leave them out of the spirit, intent, and general purpose of the ordinance of zoning.*' "

And it was the holding of the court in the Zimmerman case that the action of the adjustment board was in effect amendatory of the ordinance itself and was therefore arbitrary and illegal, and that the plaintiff had a right to proceed by injunction. We said:

"The action of the adjustment board was without legal authority and in violation of both the city ordinance and the statute. Accordingly, under all the circumstances, an injunction will lie to restrain the appellee from converting her single dwelling house into a duplex." Zimmerman v. O'Meara, 215 Iowa 1140 at page 1150, 245 N. W. 715, 719.

In the case of Hoover v. Iowa State Highway Commission, 207 Iowa 56, at page 65, 222 N. W. 438, 442, another case cited by appellee in its brief, a case where the court held that the officers of the state highway commission acted beyond and without any authority of law, and that their actions were illegal and under such circumstances an action for writ of injunction would lie, it was there said:

"Many decisions, however, are to be found in the books, declaring an injunction to be the proper relief, where boards and courts have sought to act without jurisdiction."

On the other hand, it has been held by this court in many cases involving matters of taxation that:

"A tribunal having been created by the legislature, and invested with power to hear certain complaints and grievances in the listing and assessment of property, its jurisdiction in all such matters is exclusive of all other remedies allowed by law, except as hereafter shown. * * * The failure of a person aggrieved by the assessment of his property to appear before the board of review and make complaint waives his right to subsequently complain of any irregularity in the listing and assessment thereof."

See Griswold Land & Credit Co. v. County of Calhoun, 198 Iowa 1240, at page 1242, 201 N. W. 11, 12, citing a long list of cases, beginning with Macklot v. City of Davenport, 17 Iowa 379, wherein Justice Cole, speaking for the court, said:

"It is apparent from this general view of the question, that since the statute has provided a tribunal where any person may correct an erroneous assessment of his property, before such assessment becomes the basis of the rate of levy, and with equal and certain justice to himself, and without prejudice to the government, he ought to be required to apply to that tribunal for its correction. *It may, therefore, be safely held that where a statute upon a particular subject has provided a tribunal for the determination of questions connected with that subject, that the jurisdiction thus conferred is exclusive, unless otherwise expressed or clearly manifested; and that generally where a statute in relation to revenue provides a tribunal for the correction of the errors of the officers by a proceeding in the nature of an appeal to it, that such quasi appellate jurisdiction is exclusive.* [Italics are ours.] Of course, this exclusiveness of jurisdiction in the special tribunal, relates only to the correction of errors in the particular matters provided for, and does not prevent a party from resorting to the ordinary tribunals for remedy against the assessor, when from corruption or malice he has over assessed, or the like. Fuller v. Gould, 20 Vt. (5 Washb.) 643; nor, from the general remedy by *certiorari* to the special tribunal (Rev., ch. 140); nor from *man-*

*damus.* Hershey v. Fry, 1 Iowa 593. So it will be seen, that ample remedies are afforded the citizen and taxpayer, even when he is confined to the course provided by statute, and at the same time the operations of the government, whether state or municipal, are not unnecessarily interfered with. From the considerations already suggested, as well as from many others, which will readily suggest themselves to the legal mind, it is clear, both upon principle and policy, that the taxpayer should be limited to the remedy provided by the statute."

The very purpose of creating a board of adjustment is to enable matters of the kind and character involved in this suit to be adjusted. Here we have an individual property owner who is attempting to use his property in a way and manner distasteful and detrimental to his neighbors, and when he applies for a permit and the building inspector grants the same, these property owners are aggrieved parties and have a right to an appeal and to have the matter submitted to this board created for the very purpose of reviewing the action of the inspector, and adjusting the difficulties between the adjacent property owners and the applicant for a permit.

The evidence in this case shows that many of the elements of nuisance will very probably be present should the commercial greenhouse be erected. It is undisputed in the record and testified to by various witnesses that fresh and new manure from the stock yards is used in propagating the plants in a greenhouse, and that this is a rendezvous for rats, mice and other rodents and will draw flies and give off offensive odors, and the location of such business in close proximity to fine dwellings will depreciate the market value of such properties and make them much less desirable as residence properties and will be offensive and tend to irritate and grieve the inmates of such homes, thereby being detrimental to health, and while the same would not perhaps be a nuisance per se, it would, unless very carefully managed, when considered in connection with the proposed location, become a nuisance in fact. As said by this court in McGill v. Pintsch Co., 140 Iowa 429, at page 432, 118 N. W. 786, 788, 20 L. R. A. (N. S.) 466, speaking through Chief Justice Ladd:

"An offensive trade or manufacture may require interference in equity as well as any other nuisance, for though necessary and

lawful they should be exercised in remote places. Says Judge Cooley concerning the subject generally in Gilbert v. Showerman, 23 Mich. 448: 'The right, nevertheless, to have such a business restrained is not absolute and unlimited, but is, and must be in the nature of things, subject to reasonable limitations which have regard to the rights of others not less than to the general public welfare. One man's comfort and enjoyment with reference to his ownership of a parcel of land cannot be considered by itself distinct from the desires and interests of his neighbors, as otherwise the wishes of one might control a whole community, and the person most ready to complain might regulate to suit himself the business that should be carried on in his neighborhood. In a crowded city, some annoyance to others is inseparable from almost any employment, and while the proximity of the stables of a dealer in horses, or of the shops of workers of iron or tin, seems an intolerable nuisance to one, another is annoyed and incommoded, though in less degree, by the bundles and boxes of the dealer in dry goods, and the noise and jar of the wagons which deliver and remove them. Indeed, every kind of business is generally regarded as undesirable in the parts of a city occupied most exclusively by dwellings, and the establishment of the most cleanly and quiet warehouse might, in some neighborhoods, give serious offense and cause great annoyance to the inhabitants. This cannot be otherwise so long as the tastes, desires, judgments, and the interests of men differ as they do; and no rule of law can be just which, in endeavoring to protect the interests and subserve the wishes of a complaining party, fails to have equal regard to the interests and wishes of others. The true principle has been said by an eminent jurist to be one "growing out of the nature of well-ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it shall not be injurious to the equal enjoyment of others having an equal right to enjoyment of their property, nor injurious to the rights of the community. *All property is held subject to those general regulations which are necessary to the common good and general welfare. Rights of property, like all other social and conventional rights, are subject to such reasonable restraints and regulations established by law as the legislature, under the governing and controlling power vested in them by the Constitution, may think necessary and expedient.*" ' " (Italics are ours.)

The very purpose of the zoning ordinance is to meet and solve the problems discussed by Judge Cooley in the foregoing quotation. The manner of procedure is carefully drawn to protect all persons interested and as long as the officials of the city act reasonably within their jurisdiction and powers conferred upon them by the ordinances of said city, and the laws of the state, and do not act arbitrarily and illegally beyond their jurisdiction, the remedies by appeal provided for by statute and the ordinance should be and are exclusive.

Other matters are raised and argued by the litigants which we have considered, but which are not controlling in view of the result herein announced. The action of the lower court in granting the injunction is therefore erroneous and should be and is hereby reversed.—Reversed.

MITCHELL, DONEGAN, KINTZINGER, POWERS, and PARSONS, JJ., concur.

ANDERSON, C. J., takes no part.