FREDERICK B. KENT *vs.* ZONING BOARD OF REVIEW OF THE TOWN OF BARRINGTON.

JANUARY 26, 1949.

Present: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J.   This is a petition for certiorari directed to the zoning board of review of the town of Barrington, hereinafter referred to as the board, commanding them to certify to this court the records relating to their decision on petitioner's application for a variance under the zoning ordinance of that town.   The writ issued and pursuant thereto such records have been duly certified.

A similar petition was the subject of our opinion in *Kent* v. *Zoning Board of Review,* 74 R. I. 89.   Upon an examination of the record then before us we concluded that the board had misconceived their duty in the matter and therefore we quashed the record of their decision denying petitioner's application for a variance.   But, as the error in the board's decision affected only the scope of their authority to determine the question before them, we set out in our opinion the standards that should control their judgment and ordered the papers certified to us sent back to them

with instructions to reconsider such application in accordance with those standards, reserving *to the board* the right to hear further evidence if they so desired. The board deemed it unnecessary to hear further evidence and reconsidered the application in accordance with our instructions. Their decision on such reconsideration resulted in the present petition for certiorari.

The facts are practically undisputed and may be summarized as follows. Kent is the owner of a farm of some twenty acres with a frontage of about 800 feet on New Meadow Road in the town of Barrington. This land is in a residence B district, in which, according to sec. 3 of the zoning ordinance, business or manufacturing on a commercial scale is not permitted. By reference to and incorporation therein of item 5 under residence A districts, sec. 3, however, provides that where the owner maintains his bona fide residence on the premises he could offer for sale vegetables actually produced thereon. Kent, who apparently kept cows and did some farming, including the raising of strawberries, did live on the premises.

Prior to the filing of any application for a variance Kent discussed with Henry P. Stone, chairman of the board, whether he could sell ice cream made from the products of the farm. Stone expressed the opinion that personally he saw no reason why, under the ordinance, Kent could not make ice cream from the products of his farm and sell that ice cream through a window of some appropriate building without a permit from the board. With this understanding Kent applied for and received from the building inspector a permit to erect on the premises a "farm building," which he then proceeded to build some distance back from New Meadow Road and close to its junction with Sowams Road, both highways in the town of Barrington. In this building he installed machinery that would make two and one-half gallons of ice cream every ten or fifteen minutes, and a hardening cabinet of sixty gallons capacity. He further intended to add a sixty-gallon dispensing cabinet.

What led Kent to file his first application for a variance and whether he filed it while the above-mentioned work was in progress or after its completion is not clear. However, in that application, which is dated March 29, 1947, he stated that the present use of the premises was "Farming," and that he wanted "to make and sell ice cream. Also Dairy and Farm Products, Milk, Cream, Eggs and Strawberries." To question 14 of the application, which requested him to state the grounds for the variance, his answer was: "As I get my living from the farm, I think I should have the right to sell *Farm* and Dairy Products or else give up Farming."

When the application just mentioned was filed and at the hearing thereon Kent did not have the assistance of counsel. Upon the denial of that application he apparently employed counsel who, on May 30, 1947, filed a new application for a variance which was substantially the same as the previous one with the exception that the answer to question 14 was "See attached Memoranda" instead of the language above quoted. The memoranda thus identified is in effect a request for a rehearing alleging as grounds therefor that Kent was not represented by counsel at the hearing on his original application; that the building was erected in reliance upon the representations of Stone; and that to deny him a variance in such circumstances would impose a hardship upon him which outweighed consideration of the public welfare.

The board granted a rehearing at which Kent, through counsel, was given full opportunity to present his case. The ensuing hearing elicited the following important facts in addition to those heretofore stated. Kent admitted that during the course of his personal conversation with Stone before any application for a variance was filed, he told the latter that he did or intended to keep cows on his farm; that he "later changed his mind and decided not to bother"; that at the time of the rehearing he "did not have any cows"; that he intended to specialize in strawberry ice

cream, using the berries from his farm; and that he intended to bring in "from out of town" the milk, cream and other ingredients necessary for the manufacture of ice cream.

Petitions favoring and opposing the application were received by the board and a number of persons were heard in opposition thereto. The police and the planning board of the town of Barrington also opposed the granting of the variance on grounds of health, traffic congestion and development of that section as a residential district. The board then viewed the premises and subsequently denied the application in the manner that caused us to remit the case to them for further consideration in accordance with the standards set forth in our opinion heretofore mentioned. The decision now before us was the result of such reconsideration.

Briefly stated, the board in that decision denied the application on the following grounds. First, Kent did not intend to sell the products from his farm as he had originally represented, but he actually intended to conduct the business of manufacturing and selling ice cream on a substantial scale involving quantity production. Such a business, depending for its successful operation upon attracting large patronage from the motoring public, tended to increase the hazards of traffic and to create other undesirable conditions, such as noise and littering, all of which circumstances would require extra supervision by the police and other municipal authorities. Secondly, although the general area was partly undeveloped, it was suitable for development into an attractive, high-grade residential section free from any commercial atmosphere, and a trend toward such development was already in progress. Thirdly, the proposed business would cause substantial injury to neighboring property and result in a general depreciation of property value throughout the entire vicinity. The board was therefore of the opinion that the public convenience and welfare would not be served by granting the variance.

The record is clear that Stone did not mislead the peti-

tioner, and further that the board treated him with great consideration. In the circumstances, his contention that the decision of the board was arbitrary because he had taken every reasonable precaution in the matter before incurring the expenses of erecting the building and buying the machinery is not convincing. His original intention, as disclosed in the conversation with Stone and in the first application for a variance, was to manufacture ice cream from the products of his farm, meaning principally that he was going to use for such purpose the milk from cows that presumably were on the premises and the strawberries that he raised thereon. Later, however, he decided to engage in the business of manufacturing and selling ice cream on a substantial commercial scale, the ice cream to be made from products coming to him "from out of town." In such a situation he must be held to have incurred the above-mentioned expenses at his own risk, as there is nothing in the record tending to show that anyone in authority induced him to change the character and scope of his original undertaking.

Petitioner next contends that since he erected the building in accordance with the permit from the building inspector he is entitled to a variance by operation of law and cites several cases from other jurisdictions in support of that contention. Our examination of those cases, illustrative of which are *Freeman* v. *Hague*, 106 N.J.L. 137, and *Rehmann* v. *City of Des Moines*, 200 Iowa 286, shows that they are plainly inapplicable in the circumstances of the instant case. Speaking generally, in those cases the licensing authorities, which had issued a building permit through mistake or other cause not involving fraud or deceit on the part of the applicant, sought to revoke the permit after substantial performance in accordance therewith.

In the case at bar the situation is quite different. Here the building permit for a "farm building" was issued for the avowed purpose of selling ice cream made from the products of the farm upon which the building was to be

located. If Kent saw fit to erect the building on such an understanding and then changed his mind to the extent hereinbefore indicated, he cannot charge the building inspector or Stone or the zoning board with doing anything that misled him to his prejudice. Not being chargeable with such conduct, we see no reason why the board should be denied the right to exercise their discretionary powers under the zoning ordinance, especially since, speaking through the town solicitor, they do not seek "to deprive the petitioner of his right to use the building for the purpose for which he intended it," namely, for the manufacture and sale of ice cream from the products of his farm.

Petitioner also relies on *Harrison* v. *Hopkins*, 48 R. I. 42. The difference between the facts in that case and the present one is so obvious as to require no extended discussion. In the *Harrison* case the zoning ordinance was amended to the prejudice of the landowner after he had secured a building permit and had spent a considerable sum in construction. No such situation exists in the instant case.

This is not a case where a landowner is substantially deprived of all beneficial use of his land if the variance is denied. See *Robinson* v. *Town Council of Narragansett*, 60 R. I. 422. As far as appears of record the premises are suitable for the original purpose as well as for a number of uses other than the one of carrying on the business of manufacturing and selling ice cream on a commercial scale. See *Ricci* v. *Zoning Board of Review*, 72 R. I. 58, 61. We have consistently held that the decision of a zoning board of review upon matters within its discretion will not be set aside unless it clearly appears that the board acted arbitrarily or abused its discretion. *Spirito* v. *Zoning Board of Review*, 64 R. I. 411. Our examination of the record in this case fails to convince us that the board acted in any such manner.

The petition for certiorari is denied and dismissed, the

decision of the respondent board is affirmed, and the papers in the case are ordered sent back to the respondent board.

*Kenneth M. Beaver,* for petitioner.

*Lester S. Walling,* Town Solicitor, for respondent.