**B. & H. INVESTMENTS, INC.,**
Appellee,

v.

**CITY OF CORALVILLE, Iowa, et al.,**
Appellants.

**No. 55810.**

Supreme Court of Iowa.

July 3, 1973.

Donald L. Diehl and John P. Sizemore, Iowa City, for appellants.

Meardon, Sueppel, Downer & Hayes and Clair E. Hamilton, Iowa City, for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, UHLENHOPP, and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal involves the effect of the failure of a city to give notice and hold a hearing before changing its zoning ordinance.

Ordinance 200 of the City of Coralville, Iowa, divides the city into various zones. In usual fashion, the ordinance specifies the land uses which are permitted in Zone R–1 (mainly one-family dwellings), R–2 (R–1 uses plus mainly two-family dwellings), R–3 (R–1 and R–2 uses plus mainly multiple-family dwellings), and so on. The word "dwelling" is defined to exclude a mobile home. The ordinance allows mobile homes in mobile home courts in CH districts (highway commercial) and in I–1 districts (light industrial).

B. & H. Investments, Inc. owns 80 acres of land in an R–3 district in Coralville.

On August 12, 1969, without any notice or hearing, the city council of Coralville adopted Ordinance 257, which regulates mobile homes in considerable detail. Section VII of that ordinance provides in part, "A mobile home park may be located in any R–3 or agricultural district within the city limits of Coralville." Section XXI repeals all parts of ordinances in conflict with Ordinance 257. Section XXII states that if any part of the ordinance is invalid, the rest of the ordinance should nonetheless be valid.

Shortly after the council adopted Ordinance 257, the president of B. & H. contacted the Coralville city attorney about establishing a mobile home park on B. & H.'s land. The city attorney encouraged him to do so. On December 23, 1969, Coralville issued a license to B. & H. to operate a mobile home park on 65 acres of the 80-acre tract and accepted a license fee from B. & H.

B. & H. spent several thousand dollars obtaining legal and engineering services and seeking financing. Part of this expense was incurred before and part after the city issued the license. Part of the services performed would be beneficial if the land were developed for other uses.

B. & H.'s engineer testified that the land has a higher use value for uses other than a mobile home development. B. & H. did not actually commence construction on the land.

After issuing the license to B. & H., the council concluded that the portion of § VII of Ordinance 257 allowing mobile home parks in R–3 and agricultural districts is void for want of notice and hearing. See Code 1973, §§ 414.4, 414.5. Accordingly on January 27, 1970, the council revoked B. & H.'s license and refunded the license fee. Subsequently the council adopted another ordinance deleting from Ordinance 257 the portion purporting to allow mobile home parks in R–3 and agricultural districts.

B. & H. then instituted the present declaratory judgment action to have its license upheld. It also asked attorney fees for maintaining the action. The trial court held for B. & H., and Coralville and its officials appealed.

Three questions must be answered. Is the quoted part of § VII of Ordinance 257 invalid? Is Coralville estopped to assert such invalidity? Is B. & H. entitled to attorney fees?

I. *Validity of § VII.* The manner in which a city may adopt and change municipal zoning is set out in chapter 414 of the Code. Sections 414.4 and 414.5 provide:

> The council of such city or town shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established, and enforced, and from time to time amended, supplemented, or changed. However, no such regulation, restriction, or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen days' notice of the time and place of such

> hearing shall be published in a paper of general circulation in such city or town.

> Such regulations, restrictions, and boundaries may, from time to time, be amended, supplemented, changed, modified or repealed. In case, however, of a protest against such change signed by the owners of twenty percent or more either of the area of the lots included in such proposed change, or of those immediately adjacent in the rear thereof extending the depth of one lot or not to exceed two hundred feet therefrom, or of those directly opposite thereto, extending the depth of one lot or not to exceed two hundred feet from the street frontage of such opposite lots, such amendment shall not become effective except by the favorable vote of at least three-fourths of all the members of the council. The provisions of section 414.4 relative to public hearings and official notice shall apply equally to all changes or amendments.

Section VII of Ordinance 257 unquestionably changed Ordinance 200; it permitted the additional land use of mobile home parks in R–3 and agricultural districts. No notice was given or hearing was held regarding this change in order to give interested persons an opportunity to voice their views or lodge protests. Land is purchased and improved in reliance on existing zoning, and § 414.5 specifically states, "The provisions of section 414.4 relative to public hearings and official notice shall apply equally to all changes or amendments."

■ The decisions hold that when a council or similar body does not comply with such a statute the purported zoning change is void. Bowen v. Story County Board of Supervisors, 209 N.W.2d 569 (Iowa); Brackett v. City of Des Moines, 246 Iowa 249, 67 N.W.2d 542; Keller v. City of Council Bluffs, 246 Iowa 202, 66 N.W.2d 113; Annot., 96 A.L.R.2d 449, 455–456 ("Regardless of the type of notice called for by the statute, the basic requirement that notice be given is

uniformly held to impose upon the zoning authority a mandatory duty to give it, in default of which jurisdiction to pass valid zoning measures is lacking. The rule that compliance with the statute is mandatory and jurisdictional has been announced in scores of cases and appears to prevail in every jurisdiction where the question has been presented."), 466 ("Unless the statute provides otherwise, the rule making notice a mandatory and jurisdictional prerequisite to the passage of zoning measures is also applicable to ordinances amending or revising an original enactment or reclassifying property theretofore zoned."). See also 8A McQuillin, Municipal Corporations, § 25.251 at 184 (1965); 58 Am.Jur. Zoning § 10 at 945, § 176 at 1036; 101 C.J.S. Zoning § 46 at 756, § 108 at 864. B. & H. cites Smith v. City of Fort Dodge, 160 N.W.2d 492 (Iowa). But that case involved a different section of the statute, dealing with change as to individual property rather than a change in use within a district generally.

The purported zoning change in § VII of Ordinance 257 was void for want of notice and hearing.

II. *Estoppel.* B. & H. contends Coralville cannot assert the invalidity of § VII because B. & H. spent money in reliance on assurances by the city attorney and on the license issued by the city. B. & H. urges that it acquired vested rights and Coralville is estopped.

▉ Two main situations may exist. One involves a *valid* license which a city subsequently seeks to revoke under its police power, as by enacting a subsequent ordinance on the subject. In that situation, a licensee who makes expenditures in reliance on the license may acquire vested rights which prevent the city from revoking the license under some circumstances. 13 Am.Jur.2d Buildings § 10 at 274.

The other situation involves a license which is *invalid* for some reason—here, in the most extreme form, because the ordinance under which the purported license

was issued was adopted in violation of law. In that situation, the courts hold generally that the license may be revoked although the licensee made expenditures. "Generally speaking, a permit issued under mistake of fact or in violation of law confers no vested right or privilege on the person to whom the permit has been issued, and may be revoked, notwithstanding he may have acted upon it, and any expenditures made in reliance upon such permit are made at his peril." Annot., 6 A.L.R. 2d 960, 962.

The distinction between the two situations was pointed out by this court in Crow v. Board of Adjustment of Iowa City, 227 Iowa 324, 327–328, 288 N.W. 145, 146:

A building permit *duly* and *legally issued* by a municipality is more than a mere license revokable at the will of the licensor. We have held that when the permittee has to some extent acted thereon and thereby incurred expense such permit is not revokable on the grounds that the proposed building and business would be objectionable to residents of the neighborhood. Rehmann v. Des Moines, 200 Iowa 286, 204 N.W. 267, 40 A.L.R. 922. However, such holding will not apply *if the building permit was not legally granted.* Zimmerman v. O'Meara, 215 Iowa 1140, 245 N.W. 715. (Italics added.)

We recently applied the distinction in Board of Adjustment of Des Moines v. Ruble, 193 N.W.2d 497, 507 (Iowa):

In its next assignment of error intervenor asserts it obtained a vested interest in the building permit issued by the city. . . .

The intervenor relies on Rehmann v. City of Des Moines, 200 Iowa 286, 291–292, 204 N.W. 267, 270, 40 A.L.R. 922, where this court held a building permit duly and legally issued by a municipality is more than a mere license revokable at the will of the licensor. . . .

However, in Crow v. Board, 227 Iowa 324, 328, 288 N.W. 145, 146, this court

held such pronouncement will not apply if the building permit was not legally granted. . . .

The permit was invalid in its inception and during the time construction work was in progress. It follows intervenor's argument is without merit.

See also 9 McQuillin, Municipal Corporations, § 26.84 at 202 (3d ed.) ("The issuance of a license or permit in violation of an ordinance cannot estop a city from enforcing the ordinance against the licensee or permittee."), § 26.213 at 557 ("A city is not estopped from revoking an illegally issued or void permit."); 2 Metzenbaum, Law of Zoning, 1143 (2d ed.) ("This argument of 'vested rights'—unless founded upon substantial construction and expenditures under a permit *lawfully* granted—has *not* been upheld by most decisions.").

Cases like the present one demonstrate the necessity of the distinction. Affected property owners and other citizens who did not have the opportunity the statute gives them to a hearing and to protest have done nothing to estop themselves. If the council could issue an invalid license and the licensee could make it valid by expending funds, the statutory purpose of protecting other interested individuals would be thwarted.

We hold that B. & H. did not obtain vested rights which forbade Coralville from asserting the invalidity of § VII and revoking the purported license.

III. *Attorney Fees.* Since B. & H. is unsuccessful in this action, it is not entitled to attorney fees under its own theory of the law on such fees. But it would not be entitled to such fees in any event, as the case is not one of those in which a successful litigant may recover his attorney fees. See Turner v. Zip Motors, Inc., 245 Iowa 1091, 65 N.W.2d 427.

B. & H.'s petition must be dismissed.

Reversed.