Catherine B. SHORS, Appellee,

v.

**Wayne P. JOHNSON and Diana Johnson, Appellants.**

No. 96–1025.

Supreme Court of Iowa.

July 29, 1998.

Harold W. White of Fitzgibbons Brothers, Estherville, for appellants.

Robert W. Sackett of Sackett and Sackett, P.C., Milford, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

The narrow issue presented in this case is whether a neighboring property owner aggrieved by the issuance of a building permit must exhaust her administrative remedies before seeking injunctive relief from the court. The trial court held that the appellee's failure to file an administrative appeal of the zoning administrator's decision to issue the challenged zoning permit did not preclude her suit in district court. We disagree. Therefore, we reverse and remand for entry of judgment in favor of the appellants.

I. *Background Facts and Proceedings.*

Appellee, Catherine Shors, owns a home located immediately north of real estate owned by appellants, Wayne and Diana Johnson. These adjacent properties are located in the City of Wahpeton, Iowa. The present dispute arose when the Johnsons decided to construct a home on their lot.

The Johnsons were required by the Wahpeton city ordinance to obtain a building permit prior to construction of their residence. The ordinance required that the application for the permit include a site plan. In compliance with this requirement, the Johnsons submitted a site plan with their application; it showed a side yard of five feet, two inches on the north side of the house.

After the application was filed, the proposed construction was staked on the Johnsons' property. The staking established a five-foot setback line for the north side yard. The zoning administrator inspected the proposed construction as staked out and told the Johnsons' designer that the plan complied with the city's zoning requirements. The zoning administrator issued a building permit the next day, September 19, 1991.

Wahpeton zoning ordinance no. 42 establishes a minimum side yard requirement of eight feet for single family dwellings. It also provides that "the side yard may be reduced to not less than 10 percent of the lot width, but in no case less than 5 feet." It is undisputed on appeal that the Johnsons' lot is eighty feet wide, and under the terms of the ordinance, they are required to have a side yard no less than eight feet in width.[1]

Upon issuance of the building permit, the Johnsons' contractor began excavating their lot, completing this task on September 25, 1991. During the excavation, Shors noticed the closeness of the hole to her lot line. She questioned the contractor about her observations and was informed that they dig the hole larger than the actual house dimensions. Shors thereafter closed her Wahpeton home for the summer and did not return until the spring of 1992.

When Shors returned the following spring, she saw that the framework of the Johnsons' home was nearly completed. Her concern about the closeness of her neighbors' house was renewed, so she went to the city hall to

---

1. For many years prior to 1991, the city had interpreted its zoning ordinance as requiring a minimum side yard of only five feet. In October, 1992, however, the city attorney advised the zoning administrator to change his interpretation of the ordinance because ordinance no. 42 actually required a minimum side yard of eight feet for any lot that was eighty feet or more in width. By the fall of 1992, when the city recognized its error, the Johnsons' residence was nearing completion.

read the zoning ordinance. Shors concluded the ordinance required an eight-foot side yard. She then measured the north side yard of the Johnsons' property and found it to be five feet.

At this point, Shors asked her son, a Des Moines attorney, for assistance. Shors' son spoke with Mr. Johnson and corresponded with him from late May through late June 1992, but could not resolve the problem. By early June 1992, the framing and roof of the house had been completed, and the windows had been installed. All construction on the house was finished by May 1993.

Shors filed her petition in this case on December 16, 1993. She pled several counts, but withdrew all prior to trial except count I. In count I, Shors alleged the Johnsons' home violated Wahpeton zoning ordinance no. 42. She requested that the court order the Johnsons to modify their home so that it would comply with the ordinance's minimum eight-foot side yard requirement.

After a bench trial, the district court granted the relief requested by Shors.[2] The court found the Johnsons' north side yard did not comply with ordinance no. 42 and the building permit had been illegally issued. It also held the proximity of the Johnsons' home to Shors' property constituted an irreparable injury to Shors and, therefore, Shors was entitled to injunctive relief. The court ordered the Johnsons to remove their residence or bring the north side into compliance with the zoning ordinance. In ruling in favor of Shors, the trial court rejected the Johnsons' argument that Shors failed to exhaust her administrative remedies.

## II. *Issues on Appeal and Scope of Review.*

The Johnsons assert Shors did not exhaust her administrative remedies because she failed to appeal the zoning administrator's decision to issue the building permit. They contend Iowa Code section 414.10 (1991) required Shors to file an appeal with Wahpe-

ton's board of adjustment and her failure to do so bars any relief from the district court. Shors counters that adjacent property owners need not exhaust an administrative process in which they were not participants and of which they did not receive notice.

■ A plaintiff's failure to exhaust an administrative remedy deprives the district court of jurisdiction of the case. *See Aschan v. State,* 446 N.W.2d 791, 792 (Iowa 1989). Contrary to the arguments of the parties, the issue is not one of subject matter jurisdiction. *See Holding v. Franklin County Zoning Bd. of Adjustment,* 565 N.W.2d 318, 319 (Iowa 1997). Our scope of review is for correction of errors of law. *See id.* at 320; *Riley v. Boxa,* 542 N.W.2d 519, 521 (Iowa 1996).

## III. *Discussion.*

■ It is well established that a party must exhaust any available administrative remedy before seeking relief in the courts. *See Iowa Coal Mining Co. v. Monroe County,* 555 N.W.2d 418, 431 (Iowa 1996). The exhaustion doctrine applies when (1) an adequate administrative remedy exists, and (2) the governing statute requires the remedy to be exhausted before allowing judicial review. *See Riley,* 542 N.W.2d at 521. The statute upon which the Johnsons rely is Iowa Code section 414.10, which states:

Appeals to the board of adjustment may be taken by any person aggrieved ... by any decision of the administrative officer. Such appeal shall be taken within a reasonable time as provided by the rules of the board by filing with the officer from whom the appeal is taken and with the board of adjustment a notice of appeal specifying the grounds thereof.

The Wahpeton city ordinance requires that "any person aggrieved" by a decision of the zoning administrator must appeal to the board of adjustment within ten days. (If the person aggrieved is dissatisfied with the decision of the board of adjustment, he or she has the right to file a petition for writ of

---

**2.** Shors also asserted that the Johnsons' south side yard violated the ordinance. Although the court ruled that the south side yard was less than the required minimum of eight feet, it concluded this violation did not adversely affect the use and enjoyment of Shors' property. Therefore, the court granted no relief with respect to the south side yard. Shors does not challenge this ruling on appeal.

certiorari in the district court. *See* Iowa Code § 414.15.) We must decide whether an appeal to the board of adjustment is an adequate remedy and whether section 414.10 requires that such an appeal be exhausted before resort to the courts. We answer both questions affirmatively.

■ A. *Adequacy of remedy.* We first note that Shors does not contest her status as an aggrieved person within the meaning of section 414.10. The evidence established that the decision of the zoning administrator to issue a building permit allowing five-foot side yards on the lot adjacent to Shors' property adversely affected the value and use of her property. Although an administrative appeal was thus available to her, Shors claims she was not required to resort to this remedy because it was inadequate. We disagree.

The board of adjustment has the power "[t]o hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this chapter or of any ordinance adopted pursuant thereto." Iowa Code § 414.12. In exercising this power, the board may

> reverse, or affirm, wholly or partly, or may modify the order, requirement, decision, or determination appealed from and may make such order, requirement, decision, or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken.

*Id.* § 414.13. Pursuant to these statutes, the Wahpeton board of adjustment had the power to reverse a decision of the zoning administrator and revoke a previously-issued building permit. Such action by the Wahpeton board of adjustment here would have prevented construction of a house on the Johnsons' lot with side yards less than the required eight-foot minimum, the precise relief requested by Shors in this lawsuit. *See id.* § 414.11 (stating that administrative appeal "stays all proceedings in furtherance of the action appealed from").

■ Nevertheless, Shors argues that this remedy is inadequate under the facts of this case because once construction had progressed to the point where Shors had constructive

notice of the violation, the Johnsons' house was in place and the board had no power to order the Johnsons to abate the violation. At the time Shors obtained constructive notice, the board would have had the power to revoke the Johnsons' permit, thereby rendering them in violation of the ordinance. *See B. & H. Inv., Inc. v. City of Coralville,* 209 N.W.2d 115, 118 (Iowa 1973) (holding property owner issued an illegal permit did not acquire any vested rights even though it made substantial expenditures in reliance on the permit). Had the board revoked the Johnsons' permit and had the Johnsons not voluntarily remedied the violation, the city would have been able to obtain a court order directing the Johnsons to abate the violation. *See* Iowa Code § 414.20 (allowing city council to bring an action to correct or abate a violation of city's zoning ordinance). Thus, we hold the remedy provided by section 414.10 is adequate.

■ B. *Exclusivity of remedy.* This court has previously held that section 414.10 "implicitly require[s] [an aggrieved person] to exhaust her administrative remedies by appealing to the board of adjustment before [seeking] judicial intervention." *Riley,* 542 N.W.2d at 523. Shors seeks to distinguish this case by pointing out that the aggrieved person in *Riley* was the property owner whose request for a variance had been denied by the building administrator. In contrast, she asserts, she had no administrative notice and did not otherwise participate in the administrative process leading to the issuance of the Johnsons' building permit.

We find nothing in section 414.10 that would limit its applicability to only certain aggrieved persons. Rather, the language of the statute is all encompassing: "Appeals to the board of adjustment may be taken by *any* person aggrieved...." Iowa Code § 414.10 (emphasis added). Furthermore, we have interpreted an identically-worded predecessor statute as creating an exclusive remedy for persons who object to the granting of a permit. *See Call Bond & Mortgage Co. v. City of Sioux City,* 219 Iowa 572, 587,

259 N.W. 33, 40 (1935) (interpreting Iowa Code § 6461 (1931)).[3] In *Call Bond,* we said:

> Here we have an individual property owner who is attempting to use his property in a way and manner distasteful and detrimental to his neighbors, and when he applies for a permit and the building inspector grants the same, these property owners are aggrieved parties and have a right to an appeal and to have the matter submitted to this board [of adjustment] created for the very purpose of reviewing the action of the inspector, and adjusting the difficulties between the adjacent property owners and the applicant for the permit.

*Id.* at 585, 259 N.W. at 39. We dismissed the injunction action filed in *Call Bond* because the administrative remedy had not yet been exhausted. *Id.* at 587, 259 N.W. at 40.

Despite this precedent, Shors argues that such an interpretation of the statute is inherently unfair to persons in her position. She contends that the appeal time could easily expire before an adjacent property owner had any notice that his or her rights had been adversely affected by an action of the zoning administrator.[4] We have previously held, however, that the time for an appeal under section 414.10 does not automatically start to run from the date of the challenged action. *See Arkae Dev., Inc. v. Zoning Bd. of Adjustment,* 312 N.W.2d 574, 577 (Iowa 1981).

In *Arkae,* the city manager had issued a building permit to Arkae Development, Inc. on January 7, 1980, but the city councilman who later challenged the permit did not learn of its issuance until February 20, 1980. 312 N.W.2d at 575. The councilman filed an appeal with the board of adjustment on February 22, 1980. *Id.* The board ordered that the building permit be revoked because it violated a city zoning ordinance. *Id.* Arkae then filed a petition for writ of certiorari, claiming the councilman's appeal to the board of adjustment was untimely because it was not filed within thirty days of the city manager's decision, as required by the board's rule. *Id.*

In rejecting Arkae's timeliness argument, we noted that "courts have almost uniformly held that time to file an appeal with a zoning board of adjustment commences when the appealing party is chargeable with notice or knowledge of the decision complained of." *Id.* at 577. In line with this authority, we held

> the time for appeal should run from the earliest of the date (a) the appealing party had actual knowledge of the decision appealed from, (b) the appealing party was chargeable with knowledge of that decision, or (c) notice of the decision is given in a reasonable, specified manner. Second, knowledge or notice of a "decision" refers not only to the administrative decision itself (*e.g.,* issuance of a building permit) but also to the facts constituting the basis for objecting to that decision (*e.g.,* the fact that the permit holder intends to use the property in a manner not clearly specified in the permit).

*Id.* (citations and footnote omitted).

■ Pursuant to these legal principles, the ten-day period for appeal of the zoning administrator's decision to issue a building permit to the Johnsons did not begin on September 19, 1991, the date the permit was issued. Rather, the appeal period commenced when Shors had actual or constructive notice of the zoning administrator's decision to allow five-foot side yards on the Johnsons' property. (The Johnsons do not claim that notice of the zoning administrator's decision was given to Shors "in a reasonable, specified manner,"

---

**3.** The cases upon which Shors relies to support her contrary position are not on point. *See B. & H. Inv.,* 209 N.W.2d at 115; *Boardman v. Davis,* 231 Iowa 1227, 3 N.W.2d 608 (1942); *Boehner v. Williams,* 213 Iowa 578, 239 N.W. 545 (1931); *Kamp v. Stebens,* 517 N.W.2d 227 (Iowa App. 1994). Although these cases allowed the aggrieved party to pursue a court remedy, an exhaustion-of-administrative-remedies issue was not raised.

**4.** Shors makes no claim that ten days is an unreasonable time within which an appeal must be taken. *See* Iowa Code § 414.10 ("Such appeal shall be taken within a *reasonable* time as provided by the rules of the board...." (Emphasis added.)).

the third way in which the appeal time may be commenced.) Shors' own testimony reveals that by the spring of 1992, at the latest, she had actual knowledge that the Johnsons were building a home with five-foot side yards in violation of ordinance no. 42. Nevertheless, Shors did not file an appeal with the board of adjustment. We hold that her failure to do so bars her subsequent attempt to obtain relief in the courts.

Our decision is consistent with the principles underlying the exhaustion-of-administrative-remedies doctrine. It allows the administrative agency charged with the day-to-day responsibility of interpreting its governing ordinances and statutes to correct any error its administrative officers may have made. *See Aschan,* 446 N.W.2d at 792–93. Moreover, correction of an error at the administrative level can occur more expeditiously than it would if the parties initiated certiorari or injunction proceedings in the district court. A speedy resolution is particularly important in a case such as this one because the party issued the building permit usually proceeds promptly with construction in reliance on the validity of the permit. And finally, as we have demonstrated, there is no unfairness in the process as applied to someone in Shors' position because the time for taking an administrative appeal does not commence until an aggrieved person has actual or constructive notice of the adverse action.[5] We think our resolution of this case strikes a proper balance between the competing concerns of a property owner who builds in reliance on a permit issued by the city and an objector whose interests are invaded by the city's erroneous decision.

## IV. *Disposition.*

In summary, we hold the trial court erred in ruling that Shors was not required to exhaust her administrative remedy. Because the record establishes that Shors did not file an appeal with the board of adjustment, the Johnsons proved their affirmative defense of failure to exhaust administrative remedies. Therefore, we reverse and remand for entry of judgment in favor of the Johnsons.

### REVERSED AND REMANDED.

---

5. Shors argues that the principle of constructive notice is unfair when applied to a vacation community such as Wahpeton, which is located on Lake Okoboji, because many residents are only there during the summer season. *See Arkae,* 312 N.W.2d at 577 n.2 ("[W]hen construction begins pursuant to a permit and this activity is visible to the public, an objector is chargeable with knowledge of the permit even though he himself does not learn of the construction or the permit until later."). She points out that a property owner in Wahpeton could easily be unaware of building activity that would ordinarily give a person constructive notice of a permit. We need not resolve the question of whether the doctrine of constructive notice should be modified when the property is located in a seasonal community, because we base our decision on Shors' *actual* knowledge of the zoning administrator's adverse decision, not on her constructive knowledge of it.