KEOKUK COUNTY, Iowa, Appellee,

v.

H.B., Appellant,

State of Iowa ex rel. Department of Human Services, Charles Palmer, Director, Intervenor–Appellant.

No. 97–726.

Supreme Court of Iowa.

April 28, 1999.

James F. Elliott, Legal Services Corporation of Iowa, Ottumwa, for appellant-H.B.

Thomas J. Miller, Attorney General, Gordon Allen, Deputy Attorney General, and

Mary W. Vavroch, Assistant Attorney General, for intervenor-appellant.

Carlton G. Salmons of Austin, Gaudineer & Comito, L.L.P., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL, and CADY, JJ.

CADY, Justice.

This case places a county and the state government at odds over the administrative and financial care of mentally disabled persons in Iowa. The county instituted an action in district court to resolve the controversy. We conclude the county failed to exhaust its administrative remedies and reverse the judgment entered by the district court.

H.B. is the mentally disabled individual at the center of the dispute. He is thirty-one years old and has received social security disability benefits based upon his mental disability since he was ten years old. H.B. resided in a variety of facilities around the state following high school, and has lived in Keokuk County since 1984. He currently resides in an apartment and receives case management services through the Department of Human Services (DHS). These services basically involve community-supported living and vocational assistance.

Keokuk County has paid for the services received by H.B. since 1984. The county funded all categories of mental health, including developmentally disabled (DD), brain injured (BI), mildly retarded, moderately retarded, severely retarded, and profoundly retarded. The level or category of mental disability helps define the type of care the person requires. The various levels of care include institutionalized care, residential care facility living, and supervised apartment living.

The county learned it was not responsible for payment of the services it provided for all categories of mentally disabled residents of the county. Instead, it learned that county funding for developmentally disabled and brain injured was discretionary. Consequently, in December 1994, the Board of Supervisors for Keokuk County discontinued funding services for DD and BI persons.

At the time Keokuk County discontinued DD and BI funding, H.B. was receiving community-based services as part of a federal initiative called home and community based services—mental retardation (HCBS—MR) waiver program. This program provided home or community-based services for mentally retarded individuals who would otherwise qualify for services in an intermediate care facility. The program was administered by the DHS and required each person to be mentally retarded and in need of intermediate facility care. H.B. was evaluated for the program in 1994 and certified by the DHS to qualify. He was subsequently certified for 1995 and 1996. Under the program, Medicaid paid sixty-three percent of the costs of services while the county was responsible for thirty-seven percent of the costs.

The decision by Keokuk County to discontinue DD and BI funding did not immediately impact H.B. because he was under the HCBS—MR waiver program. Keokuk County, however, had received conflicting information in the past on the mental health classification of H.B. Although H.B. was certified as mentally retarded under the waiver program qualifications, his service providers had reported at various times that he was developmentally disabled.

On January 3, 1995, Keokuk County filed a petition for declaratory judgment in district court against H.B. The petition sought mental health information about H.B., requested H.B. submit to IQ testing, and asked the district court to decide whether the county was obligated to pay for the costs of his care and support. The DHS subsequently requested to intervene, and Keokuk County later cross-claimed against the DHS. The cross-claim alleged, among other things, the DHS was improperly operating the waiver program.

The DHS moved for summary judgment based on the failure of Keokuk County to exhaust administrative remedies. The district court denied the motion and the case proceeded to trial. In a lengthy written decision, the district court found Keokuk County was entitled to the mental health information from H.B., the DHS improperly

delegated its authority under the waiver program, the waiver program was operated in violation of the DHS rules, the waiver program operated by the DHS was void as to H.B., the DHS violated Iowa Code section 25B.6 (1995), Keokuk County had no duty to fund H.B. in the waiver program, Keokuk County was entitled to restitution and interest from the DHS for the past funds it provided for H.B., and Keokuk County was not entitled to attorney fees.

H.B. and the DHS appealed. Keokuk County cross-appealed the denial of attorney fees.

## I. Standard of Review.

Our scope of review for actions tried in equity is de novo. Iowa R.App. P. 4. However, the scope of review of rulings on subject matter jurisdiction is for correction of errors at law. *White v. Northwestern Bell Tel. Co.*, 514 N.W.2d 70, 74 (Iowa 1994); *Tigges v. City of Ames*, 356 N.W.2d 503, 512 (Iowa 1984).

## II. Exhaustion of Remedies.

H.B. and the DHS contend the action for declaratory judgment filed by Keokuk County constituted a challenge to the DHS decision to qualify H.B. for the waiver program. Consequently, they submit the county was required to exhaust the available administrative remedies provided by the DHS before invoking the jurisdiction of the district court. H.B. and the DHS raised this issue in their pleadings, and the DHS used it as the basis for a motion for summary judgment. The district court overruled the motion for summary judgment and found in the written ruling following the trial that there were no administrative remedies available for the county to exhaust.

The county claims the issue was not properly preserved for appeal. It asserts the DHS consented to the adjudication of the issues by the district court by intervening in the action, and both parties waived the exhaustion issue by failing to file an Iowa Rule of Civil Procedure 179(b) motion following the trial.

## A. Waiver—Preservation of Error.

It is well-established that a party must exhaust any available administrative remedies before seeking relief in the courts. *Shors v. Johnson*, 581 N.W.2d 648, 650 (Iowa 1998). The district court is deprived of jurisdiction of the case if administrative remedies are not exhausted. *Id.*

When a party claims a jurisdictional challenge has been waived, it is often necessary to determine whether the specific challenge to jurisdiction targets subject matter jurisdiction or jurisdiction of a particular case. Subject matter jurisdiction refers to the authority of the court to hear and determine the general class of cases to which the proceeding belongs. *Christie v. Rolscreen Co.*, 448 N.W.2d 447, 450 (Iowa 1989). It cannot be conferred by consent, waiver, or estoppel. *State v. Mandicino*, 509 N.W.2d 481, 483 (Iowa 1993). This is because parties to a lawsuit cannot establish jurisdiction where it has not been first conferred by the constitution or legislation. *See Molitor v. City of Cedar Rapids*, 360 N.W.2d 568, 569 (Iowa 1985). On the other hand, the failure to properly invoke the authority of the court in a particular case can be obviated by consent, waiver, or estoppel. *Mandicino*, 509 N.W.2d at 483.

Generally, the exhaustion-of-remedies requirement does not implicate subject matter jurisdiction. *Shors*, 581 N.W.2d at 650; *see Holding v. Franklin County Zoning Bd. of Adjustment*, 565 N.W.2d 318, 319 (Iowa 1997). This is because the exhaustion-of-remedy doctrine does not preclude judicial review, but merely defers it until the administrative agency has made a final decision. *See* 2 Am.Jur.2d *Administrative Law* § 505, at 491 (1994). Our legislature has given the district court subject matter jurisdiction to act in response to challenges to decisions made by administrative agencies, but requires this authority to be withheld until any available administrative remedies have been exhausted. *Shors*, 581 N.W.2d at 650; Iowa Code ch. 17A. Thus when a litigant requests judicial review before exhausting administrative remedies, the district court merely lacks authority to entertain a particular case. This is the type of challenge that can be waived.

The county claims the exhaustion requirement has been waived because the DHS consented to litigating the issues in the case in district court by intervening in the proceeding. It asserts the consent extended to the original declaratory judgment petition, as well as the subsequent cross-claim. Additionally, the county claims error was not preserved by filing a motion under rule 179(b).

An intervenor must typically accept an action as it exists at the time of intervention. *See* 59 Am.Jur.2d *Parties* §§ 173, 174, at 672–75 (1987). Thus, a party who intervenes in a case in which the court has subject matter jurisdiction, and asks for relief, waives any challenge to the authority or jurisdiction of the court over the particular case. *Morse v. Morse*, 247 Iowa 1113, 1122–23, 77 N.W.2d 622, 627–28 (1956). However, an intervenor is not prohibited from advancing other claims and defenses appropriate to the case following intervention. *See* 59 Am.Jur.2d *Parties* § 174 (1987).

In this case, the cross-claim brought after the DHS intervened raised issues well beyond the original proceeding, and changed the complexion of the lawsuit. It targeted the DHS and sought relief not included in the declaratory judgment. This permitted the DHS to challenge the cross-claim, including the authority of the court to hear it. The intervention did not constitute consent to any jurisdictional defects in the cross-claim. Moreover, any consent to the authority of the court to hear the original declaratory judgment action established by the intervention of the DHS did not affect the ability of H.B. to raise the issue.

Finally, we disagree with the county that H.B. and the DHS were required to file a 179(b) motion to further preserve error. A motion under rule 179(b) is necessary to preserve error only when a court fails to resolve an issue properly submitted to it. *See Bellach v. IMT Ins. Co.*, 573 N.W.2d 903, 906 (Iowa 1998). The exhaustion issue was raised in this case and decided by the court on summary judgment. Furthermore, the district court specifically found in its final ruling there were no administrative remedies

to exhaust. Accordingly, we find the claim of error was properly preserved.

## B. Merits.

When an administrative remedy has been established by statute, our courts are generally not immediately available to litigants to grant relief. *See IES Utils. Inc. v. Iowa Dep't of Revenue & Fin.*, 545 N.W.2d 536, 538 (Iowa 1996). Instead, litigants affected by the actions of state agencies must exhaust all prescribed administrative remedies before obtaining proper access to the district court. *Id.;* Iowa Code § 17A.19(1) (1997). The failure to exhaust all required administrative remedies deprives the court of its authority and requires dismissal when properly raised. *Aschan v. State*, 446 N.W.2d 791, 794 (Iowa 1989). The exhaustion requirement serves several purposes including honoring agency expertise, handling matters within an agency and not in the courts, and preserving judicial resources. *IES Utils.*, 545 N.W.2d at 538; *see also* Bernard Schwartz, Administrative Law 731 (3d ed.1988).

Two conditions must exist before the exhaustion requirement is imposed. *North River Ins. Co. v. Iowa Div. of Ins.*, 501 N.W.2d 542, 545 (Iowa 1993). First, an administrative remedy must exist for the claimed wrong. *Id.* Second, a statute must expressly or implicitly require that remedy to be exhausted before resort to the courts. *Id.* These conditions recognize not all administrative actions by the state involve the type of agency action which implicates the exhaustion requirement of chapter 17A. *See Hornby v. State*, 559 N.W.2d 23, 24 (Iowa 1997); *Jew v. University of Iowa*, 398 N.W.2d 861, 864 (Iowa 1987).

The county argues neither condition was present in this case to support the imposition of the exhaustion requirement. It claims the declaratory judgment petition was not a challenge to the agency action but an independent claim under Iowa Code sections 331.440 and 220.60 which do not impose any exhaustion requirement. It further argues no administrative remedies existed based upon the testimony of the administrator of the waiver program, who testified the county was re-

quired to accept the DHS decision to qualify H.B. Additionally, the county argued there were no statutes which required it to exhaust any administrative remedies. Finally, the county asserted that any exhaustion would be fruitless.

### 1. Existence of administrative remedy.

In addressing the existence of an administrative remedy for the claimed wrong, it is important to consider the relief sought. This first prong does not apply if the relief sought is not within the jurisdiction of the agency. *See Aschan,* 446 N.W.2d at 793.

The county did not ask for judicial review but sought declaratory relief. However, the label attached to a petition is not determinative. *See Kelly v. Nix,* 329 N.W.2d 287, 290 (Iowa 1983). Although a portion of the petition sought confidential records from H.B., the county freely acknowledged the gist of the action was to obtain the declaration that H.B. was not mentally retarded. It also admitted the declaration was sought to declare H.B. ineligible for the waiver program.

Federal law authorizing state participation in Title XIX programs require eligibility determinations to be made by a single state agency. *See* 42 U.S.C. § 1396A(a)(5). Under our governing statutes and rules, the Iowa DHS is the agency authorized to make eligibility determinations under federal/state Title XIX programs, including the HCBS—MR waiver program. *See* Iowa Code § 249A.12; Iowa Admin. Code r. 441—83.61 (1999). In turn, the DHS is authorized to obtain assistance in making eligibility determinations for the waiver program. *See Bunger v. Iowa High Sch. Athletic Ass'n,* 197 N.W.2d 555, 560 (Iowa 1972); Iowa Admin. Code r. 441—83.61. The Iowa Foundation for Medical Care (IFMC) is the organization that assists the DHS in qualifying individuals for the program.

Clearly, the gist of the relief sought by the county in its petition was within the jurisdiction of the DHS. Moreover, procedures exist for the review and appeal to the DHS director of the level of care decisions made by IFMC. *See* Iowa Admin. Code rs. 441—83.69, 441—7.5(1), (2). Any aggrieved person is permitted to appeal. *Id.*

Notwithstanding, the county argues it is also authorized to determine eligibility for mental health services. It claims this authority establishes an independent basis for seeking relief to the district court.

Our legislature has established a "single entry point process" for counties to coordinate delivery of mental health services which it funds. Iowa Code § 331.440. This process includes reviewing eligibility for services, determining the type, level, and duration of services, and reviewing a person's continuing eligibility and need for services. *Id.* § 331.440(1)(a). Additionally, a county, at its expense, may require a person to be professionally diagnosed to determine if the person is mentally retarded and be evaluated to determine the needed level of care. *Id.* § 222.60.

Although the legislature has authorized counties to make decisions affecting the delivery of mental health services, the lawsuit initiated by Keokuk County does not implicate this authority. This is not a case involving a dispute over a delivery-of-service decision made by a county in a single entry point process. The county never made a level-of-care determination for H.B. Instead, it turned to the courts to challenge a decision made by the DHS. We conclude the gist of the relief sought by the county was within the jurisdiction of the DHS. Moreover, although the legislature contemplated cooperation between counties and the DHS in the delivery of mental health services, the eligibility determination for the waiver program remains with the DHS.

### 2. Statutory requirement for exhaustion.

We turn to the second condition of the exhaustion doctrine. The county argues the administrator of the waiver program failed to recognize any review process for the county. It also argues no statute exists which explicitly requires it to exhaust the DHS remedy before court intervention.

In determining whether administrative remedies must be exhausted before court intervention, we look to the intent of our legislature. *Aschan*, 446 N.W.2d at 793. We consider the objectives the legislature sought to accomplish and construe the statute to best affect legislative intent. *Id.* Where no explicit statutory direction exists, we consider whether the exhaustion requirement would be consistent with the statutory scheme, so that any implied exhaustion requirement is tailored to fit the role the legislature assigned to the agency. 2 Am.Jur.2d *Administrative Law* § 506, at 492–93 (1994).

Although there is no explicit statutory authority requiring a county to exhaust administrative remedies following a waiver-eligibility decision, we find exhaustion is implied. The DHS is responsible for determining eligibility for medical assistance under Title XIX programs. *See generally* Iowa Code ch. 249A; Iowa Admin. Code r. 441—83.61 (1999). This includes eligibility for the HCBS—MR waiver program. Thus, the legislature has placed the decisionmaking responsibility in the hands of the DHS. Although the DHS has transferred the initial determination to the expertise of IFMC, a review process is provided within the DHS. *See* Iowa Admin. Code r. 441—7.5. ("Any person or group of persons may file an appeal with the department concerning any issue."). Moreover, section 249A.4(14) specifically provides that "judicial review of decisions of the department of human services may be sought in accordance with chapter 17A." Iowa Code section 17A.19 permits any person aggrieved or adversely affected by agency action to seek judicial review of that action.

We think the clear implication of the statutory scheme requires the county to exhaust administrative remedies before seeking review by the courts. Furthermore, this interpretation is consistent with the underlying rationale of the exhaustion doctrine.

### 3. Futility exception to the exhaustion doctrine.

The county further argues it should escape any exhaustion requirement because it would be futile. The county relies upon the testimony of the administrator of the program, suggesting that the DHS would likely follow the IFMC eligibility determination.

We recognize an exception to the exhaustion doctrine when the administrative remedy is inadequate or its pursuit would be fruitless. *Alberhasky v. City of Iowa City*, 433 N.W.2d 693, 695 (Iowa 1988). However, the futility exception is concerned with the adequacy of the remedy, not the perceived predisposition of the decision maker. *North River Ins. Co.*, 501 N.W.2d at 546. Furthermore, the director of the DHS makes the final administrative review, and there is no suggestion that this review would be fruitless.

### III. Other Remaining Claims.

When the district court exercises appellate jurisdiction, it has no jurisdiction over other claims for relief cognizable as original actions. *Black v. University of Iowa*, 362 N.W.2d 459, 462–64 (Iowa 1985). Not only does this principle help protect the integrity of the judicial review process, but no procedural rule exists which expressly or implicitly permits joinder of judicial review claims with original actions. *Id.*

In this case, we have previously determined the primary purpose of the original petition filed by the county was to challenge the decision of the DHS. *See Kelly*, 329 N.W.2d at 290 (whether a petition vests subject matter jurisdiction in the district court is determined largely by its character, not its name). Once the appellate jurisdiction was invoked in this case, the district court had no further jurisdiction over other claims for relief cognizable as original actions. Thus, the district court had no jurisdiction over the additional claims against H.B. for the production of confidential records. Furthermore, the district court had no jurisdiction over any claims in the cross-claim beyond those for judicial review.

We conclude the district court erred by failing to dismiss the petition filed by the county. The district court also erred by failing to dismiss the cross-claim. Accordingly, we dismiss the cross-appeal for attor-

ney fees. We reverse the judgment and remand the case to the district court for entry of a dismissal.

**REVERSED AND REMANDED.**