# IN THE COURT OF APPEALS OF IOWA

No. 15-1464
Filed June 29, 2016

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**BRADLEY STEVEN GRAHAM,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.


　　　　Bradley Graham seeks review of the district court's denial of his motion to correct an illegal sentence, arguing his sentence constitutes cruel and unusual punishment. **WRIT ANNULLED.**


　　　　Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, and Timothy M. Hau and Kevin R. Cmelik, Assistant Attorneys General, for appellee.


　　　　Heard by Potterfield, P.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Bradley Graham seeks review of the district court's denial of his motion to correct an illegal sentence. Graham pled guilty to one count of sexual abuse in the third degree and was sentenced pursuant to statute to serve an indeterminate, ten-year term of incarceration. The court also imposed a mandatory special sentence of lifetime parole and ordered Graham to register as a sex offender for life. On appeal, Graham claims the special sentence imposed pursuant to Iowa Code section 903B.1 (2009) and the sex offender registration requirements under chapter 692A constitute cruel and unusual punishment and are a violation of his due process rights because he was a juvenile at the time of the offense. Alternatively, Graham contends the lifetime special sentence and the lifetime registration requirements are unconstitutional because they are grossly disproportionate to the offense committed as applied to him under article 1, section 17 of the Iowa Constitution. We treat the appeal as a petition for writ of certiorari, find no illegality in the sentences, and annul the writ.

## I. Backgrounds Facts and Proceedings

On August 24, 2010, the State charged Graham by trial information with three counts of sexual abuse in the third degree for an assault on a thirteen-year-old victim. In November 2010, Graham pled guilty to one count of sexual abuse in the third degree, in violation of Iowa Code section 709.4(2)(b),[1] and proceeded to immediate sentencing. Pursuant to sections 902.3 and 902.9(4), the court sentenced Graham to a term of incarceration for no more than ten years with no

---

[1] Iowa Code section 709.4 provides: "A person commits sexual abuse in the third degree when the person performs a sex act . . . [with a person who] is twelve or thirteen years of age," while not "cohabiting as husband and wife." Iowa Code § 709.4(2)(b).

mandatory minimum. The court also imposed a lifetime special sentence of supervision by the Iowa Department of Corrections (DOC) under section 903B.1 and ordered that Graham be subject for life to the reporting requirements of the sex offender registry statute set out in chapter 692A.[2] Graham did not appeal his conviction.

On September 6, 2013, Graham filed a motion for correction of an illegal sentence,[3] claiming the special sentence and registry provisions were unconstitutional because he was a juvenile at the time of the offense. The court held a telephonic hearing with regard to Graham's motion on September 4, 2014, during which Graham argued his sentence was illegal in light of recent juvenile sentencing decisions of the Iowa Supreme Court. The State conceded Graham should receive a resentencing hearing pursuant to *State v. Lyle*, 854 N.W.2d 378 (Iowa 2014), but also argued the recent cases were distinguishable because they applied to the mandatory incarceration of juveniles rather than the duration or terms of parole.

On April 15, 2015, Graham discharged his prison sentence after serving four and one-half years. He immediately began serving his lifetime special sentence and was placed in a work release facility.

On August 18, 2015, the court held a hearing to consider resentencing. Graham argued that, under Iowa Code section 901.5(14), the court had authority

---

[2] Iowa Code chapter 692A was amended in 2009, prior to the last date of Graham's offense. *See* 2009 Iowa Acts ch. 119, §§ 1-31. All references to chapter 692A will be to the 2011 code.
[3] We are reviewing the denial of this motion but note the record indicates, at some point in the proceedings, the motion was identified or treated as a postconviction-relief application.

to suspend the mandatorily imposed lifetime special sentence in whole or in part and requested the court suspend all but ten years of the special sentence. Graham also argued the special sentence was punitive because, if he failed to comply with the sentence, he would face additional prison time. Graham further complained the 2000-foot restriction contained within chapter 692A was punitive in nature, rather than purely administrative, and requested that the court modify the requirement pursuant to section 901.5(14). The State argued the imposition of the special sentence and the requirement that Graham register as a sex offender were appropriate and the court lacked authority to modify or resentence Graham. The court affirmed Graham's original sentence and denied his motion to correct an illegal sentence, finding the sentence was not illegal or unconstitutional because Graham was not sentenced to a mandatory minimum, but rather "had the opportunity for parole and, in fact, [had] discharged his regular sentence." The court further found it did "not have the authority to cut the length of the special sentence." Graham appeals.

## II. Scope and Standard of Review

A defendant may challenge the legality of a sentence at any time. *State v. Bruegger*, 773 N.W.2d 862, 869 (Iowa 2009); *see also* Iowa R. Crim. P. 2.24(5)(a). "Although challenges to illegal sentences are ordinarily reviewed for correction of legal errors, we review an allegedly unconstitutional sentence de novo." *Lyle*, 854 N.W.2d at 382. "[S]tatutes are cloaked with a presumption of constitutionality." *State v. Wade*, 757 N.W.2d 618, 622 (Iowa 2008) (quoting *State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005)). To overcome this presumption, Graham must prove the statutes are unconstitutional beyond a

reasonable doubt, which can only be accomplished by "refut[ing] every reasonable basis upon which the statute[s] could be found to be constitutional." *Seering*, 701 N.W.2d at 661 (citation omitted).

## III. Analysis

Graham was convicted of third-degree sexual abuse, punishable by an indeterminate term of imprisonment for no more than ten years. *See* Iowa Code §§ 709.4(2)(b), 902.9(4). Pursuant to Iowa Code section 903B.1,[4] Graham is subject to a lifetime special sentence of supervision by the DOC, to be served "as if on parole," and subject to the terms and procedures governing parole under chapter 906. In April 2015, Graham was discharged from prison and began serving his lifetime special sentence. If Graham violates the terms of his parole,[5]

---

[4] Iowa Code section 903B.1 (Supp. 2009) provides:

> A person convicted of a class "C" felony or greater offense under chapter 709, or a class "C" felony under section 728.12, shall also be sentenced, in addition to any other punishment provided by law, to a special sentence committing the person into the custody of the director of the Iowa department of corrections for the rest of the person's life, with eligibility for parole as provided in chapter 906. The board of parole shall determine whether the person should be released on parole or placed in a work release program. The special sentence imposed under this section shall commence upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense and the person shall begin the sentence under supervision as if on parole or work release. The person shall be placed on the corrections continuum in chapter 901B, and the terms and conditions of the special sentence, including violations, shall be subject to the same set of procedures set out in chapters 901B, 905, 906, and chapter 908, and rules adopted under those chapters for persons on parole or work release. The revocation of release shall not be for a period greater than two years upon any first revocation, and five years upon any second or subsequent revocation. A special sentence shall be considered a category "A" sentence for purposes of calculating earned time under section 903A.2.

This section was amended effective July 1, 2009; the amendments have no substantive effect on the arguments raised.

[5] Although standard terms of parole apply, the record does not indicate the precise terms of Graham's extended supervision.

he may have his parole revoked and be required to serve no more than two years upon any first revocation and no more than five years on any second or subsequent revocation. *Id.* § 903B.1. Graham is also subject for life to the reporting requirements of the sex offender registry statute set out in chapter 692A.

On appeal, Graham asks this court to categorically ban all mandatory lifetime special sentences pursuant to Iowa Code section 903B.1 and all mandatory lifetime sex offender registration requirements pursuant to chapter 692A imposed upon juveniles, arguing such sentences constitute cruel and unusual punishment when imposed upon juveniles and violate a juvenile defendant's due process rights. Alternatively, Graham contends the lifetime special sentence and lifetime registration requirements are unconstitutional because they are grossly disproportionate to the offense committed as applied to him under article 1, section 17 of the Iowa Constitution.

The filing of a motion to correct an illegal sentence under rule 2.24(5)(a) is an appropriate vehicle for such a challenge after the time for appeal has passed. However, a defendant does not have the right to appeal the denial of a motion to correct an illegal sentence under Iowa Code section 814.6(1) (2015). In this case, where Graham challenges his sentence as illegal, we determine the proper form of review is by a petition for writ of certiorari. Pursuant to Iowa Rule of Appellate Procedure 6.108, we treat his notice of appeal and briefs as a petition for writ of certiorari and grant the writ.

*A. Special Sentence: Cruel and Unusual Punishment*

Graham claims the Iowa Code section 903B.1 (Supp. 2009) lifetime special sentence is cruel and unusual punishment under both the federal and state constitutions because he was a juvenile at the time of the offense.[6] Both the Eighth Amendment of the U.S. Constitution and article I, section 17 of the Iowa Constitution prohibit the infliction of cruel and unusual punishment. U.S. Const. amend. VIII; Iowa Const. art. I, § 17 ("Excessive bail shall not be required; excessive fines shall not be imposed, and cruel and unusual punishment shall not be inflicted."). This protection stems from the principle "that punishment for [a] crime should be graduated and proportioned to [the] offense." *Wade*, 757 N.W.2d at 623 (alterations in original) (citation omitted).

1. Categorical Challenge

Graham asks us to adopt a categorical ban on all mandatory lifetime special sentences imposed upon juvenile offenders pursuant to Iowa Code section 903B.1. Graham contends recent U.S. Supreme Court[7] and Iowa

---

[6] The State claims this court lacks jurisdiction over Graham's constitutional challenge to the legality of his section 903B.1 special sentence because Graham is actually challenging the terms and duration of the special sentence and failed to exhaust any administrative remedies. *See Shors v. Johnson*, 581 N.W.2d 648, 650 (Iowa 1998) ("A plaintiff's failure to exhaust an administrative remedy deprives the district court of jurisdiction of the case."). Because Graham alleges the special sentence is inherently illegal because it constitutes cruel and unusual punishment, rather than claiming the DOC or the Iowa Board of Parole erred in the exercise of its discretion to modify or discharge the special sentence or registration requirements, we have jurisdiction. *See Bruegger*, 773 N.W.2d at 869.

[7] *See Miller v. Alabama*, 567 U.S. ___, ___, 132 S. Ct. 2455, 2469 (2012) (holding "a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" who commit homicide offenses is unconstitutional under the Eighth Amendment); *Graham v. Florida*, 560 U.S. 48, 79 (2010) (announcing a "categorical rule" that a sentence of life imprisonment without the possibility of parole for nonhomicide offenses committed by juveniles violated the Eighth Amendment); *Roper v.*

Supreme Court[8] decisions involving juvenile sentencing should be extended to prohibit all mandatory lifetime special sentences of postrelease supervision for juvenile offenders because they constitute cruel and unusual punishment under the federal and state constitutions. For support, Graham cites a single, recent case of the Kansas Supreme Court, in which the court concluded mandatory lifetime postrelease supervision imposed upon juveniles convicted of aggravated indecent liberties with a child categorically constitutes cruel and unusual punishment. *See State v. Dull*, 351 P.3d 641, 644 (Kan. 2015).

Our courts have repeatedly held the imposition of a section 903B.1 lifetime special sentence of supervision does not constitute cruel and unusual punishment. *State v. Harkins*, 786 N.W.2d 498, 507 (Iowa Ct. App. 2009); *State v. Sallis*, 786 N.W.2d 508, 517 (Iowa Ct. App. 2009); *see also Wade*, 757 N.W.2d at 624 (holding that imposition of a ten-year special sentence for misdemeanor and class "D" felony sex offenses, with provisions for revocation of release identical to those in section 903B.1, does not constitute imposition of cruel and unusual punishment); *State v. Cohrs*, No. 14-2110, 2016 WL 146526, at *4 (Iowa Ct. App. Jan. 13, 2016) (finding the imposition of the lifetime special sentence under section 903B.1 was not cruel and unusual punishment). We leave the task of overruling precedent to our supreme court. *See State v. Miller*, 841 N.W.2d

---

*Simmons*, 543 U.S. 551, 578 (2005) (invalidating the death penalty for all juvenile offenders under the age of eighteen).

[8] *See Lyle*, 854 N.W.2d at 402 (concluding mandatory minimum prison sentences violate article I, section 17 when imposed upon juvenile offenders); *State v. Null*, 836 N.W.2d 41, 76–77 (Iowa 2013) (holding that the *Miller* sentencing factors should be considered when a defendant has been sentenced to a lengthy term of years without the possibility of parole); *State v. Ragland*, 836 N.W.2d 107, 121–22 (Iowa 2013) (holding *Miller* would apply retroactively to cases on direct and collateral review "that are the functional equivalent of life without parole").

583, 584 n.1 (Iowa 2014) (acknowledging both the district court and the court of appeals had "properly relied on . . . applicable precedent" and noting "it is the role of the supreme court to decide if case precedent should no longer be followed"); *State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves."); *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

On this record, we decline to extend the holdings of *Ragland*, *Null*, *Lyle*, and the supreme court's most recent juvenile sentencing case *State v. Sweet*, ___ N.W.2d ___, ___, 2016 WL 3023726, at *29 (Iowa 2016) (adopting "a categorical rule that juvenile offenders may not be sentenced to life without the possibility of parole under article I, section 17 of the Iowa Constitution"), to cases involving juvenile offenders who are serving sentences of lifetime supervision rather than incarceration. *See State v. Means*, No. 14-1367, 2015 WL 6509741, at *9–10 (Iowa Ct. App. Oct. 28, 2015) (declining to extend the holdings of recent juvenile sentencing decisions to cases in which juvenile offenders do not face any mandatory minimum terms of incarceration); *State v. Marshall-Limoges*, No. 14-1610, 2015 WL 4936265, at *1 (Iowa Ct. App. Aug. 19, 2015) (rejecting defendant's request to extend the requirement to consider *Miller* factors to the imposition of any prison sentence on a juvenile defendant); *see also Luana Sav. Bank v. Pro-Build Holdings, Inc.*, 856 N.W.2d 892, 893 (Iowa 2014) (noting our court appropriately deferred to the supreme court on whether to extend the doctrine of an implied warranty of workmanlike construction). Accordingly,

applying existing law, we affirm the district court's denial of Graham's motion to correct an illegal sentence on this issue.

### 2. Gross-Disproportionality Challenge

Graham claims the mandatory lifetime special sentence of supervision is grossly disproportionate as applied to him based on the individualized facts and circumstances of his case, in violation of the cruel and unusual punishment proscription of article I, section 17 of the Iowa Constitution. "Punishment may be considered cruel and unusual 'because it is "so excessively severe that it is disproportionate to the offense charged."'" *Wade*, 757 N.W.2d at 623 (citation omitted).

> Generally, a sentence that falls within the parameters of a statutorily prescribed penalty does not constitute cruel and unusual punishment. Only extreme sentences that are "grossly disproportionate" to the crime conceivably violate the Eighth Amendment.
> Substantial deference is afforded the legislature in setting the penalty for crimes. Notwithstanding, it is within the court's power to determine whether the term of imprisonment imposed is grossly disproportionate to the crime charged. If it is not, no further analysis is necessary.

*State v. Cronkhite*, 613 N.W.2d 664, 669 (Iowa 2000) (citations omitted).

In evaluating whether a sentence is "grossly disproportionate," our supreme court has adopted the three-part test developed in *Solem v. Helm*, 463 U.S. 277, 290–92 (1983). *See Bruegger*, 773 N.W.2d at 883. Because Graham has challenged his sentence under the Iowa Constitution, "we will apply our more stringent gross-disproportionality review to the facts of his case." *State v. Oliver*, 812 N.W.2d 636, 650 (Iowa 2012).

We begin our analysis with a threshold test that measures "the gravity of the offense and the harshness of the penalty." *Solem*, 463 U.S. at 292; *see also Oliver*, 812 N.W.2d at 649. This is an objective analysis completed "without considering the individualized circumstances of the defendant or the victim" in the present case. *Wade*, 757 N.W.2d at 624 (citation omitted). If the threshold inquiry is satisfied, we then proceed to an intrajurisdictional review, "comparing the challenged sentence to sentences for other crimes within the jurisdiction." *Bruegger*, 773 N.W.2d at 873. Our next step is to then engage in an interjurisdictional analysis, comparing sentences imposed for the commission of the same or similar crimes in other jurisdictions. *Id.*

If the challenged sentence does not create an inference that it is grossly disproportionate, then no further inquiry is necessary. *Oliver*, 812 N.W.2d at 649. Thus, we must first consider whether Graham's mandatory sentence under section 903B.1 is grossly disproportionate to his crime of third-degree sexual abuse. In doing so, we defer to legislative determinations of punishment because "[l]egislative judgments are generally regarded as the most reliable objective indicators of community standards for purposes of determining whether a punishment is cruel and unusual." *Bruegger*, 773 N.W.2d at 873. Furthermore, "it is rare that a sentence will be so grossly disproportionate to the crime as to satisfy the threshold inquiry and warrant further review." *Oliver*, 812 N.W.2d at 650. However, we recognize the unique features of a case may "converge to generate a high risk of potential gross disproportionality." *Id.* at 651 (quoting *Bruegger*, 773 N.W.2d at 884). Unique features to be considered include "a broadly framed crime, the permissible use of preteen juvenile adjudications as

prior convictions to enhance the crime, and a dramatic sentence enhancement for repeat offenders." *Bruegger*, 773 N.W.2d at 884. To fully address the proportionality question, we consider the totality of circumstances, including the mitigating factors identified by Graham, as well as "other potential factors that tend to aggravate the gravity of the offense and magnify the consequences on [the victim]." *Id.* at 886.

Graham argues the statute imposing mandatory lifetime supervision is broadly framed, and his interaction with the victim is more akin to the less-culpable, Romeo-and-Juliet type of offense found within this statute.[9] The record shows Graham, then seventeen years old, engaged in a sex act with a thirteen-year-old girl who was not his wife. At his guilty plea proceeding, Graham told the court he was a visitor in the victim's home, they sat on the couch and talked after her family went to bed, and ultimately engaged in a sex act. Graham pled guilty to sexual abuse in the third degree, pursuant to Iowa Code section 709.4(2)(b). The mandatory lifetime special sentence is specifically imposed and authorized by statute for the offense Graham committed. We recognize the special sentence imposed upon Graham has serious consequences. But our legislature has chosen to protect the public from various forms and degrees of sexual offenses through the special sentence.

Furthermore, the lifetime special sentence subjects Graham to the supervision of the DOC "as if on parole." Iowa Code § 903B.1. "Parole is a

---

[9] Graham also argues the *Miller* factors should be incorporated into a gross-disproportionality analysis under article I, section 17 and that less emphasis should be placed on *Solem*'s interjurisdictional comparison. As stated earlier, under these circumstances we will leave the task of extending or overruling precedent to the supreme court. *See, e.g.*, *Eichler*, 83 N.W.2d at 578.

lenient form of punishment that monitors a person's activities to ensure the person is complying with the law. The imposition of lifetime parole is not tantamount to a sentence of life imprisonment." *State v. Tripp*, 776 N.W.2d 855, 858 (Iowa 2010). Thus, Graham will not necessarily be on parole for his entire life. *See id.* Instead, section 903B.1 provides for the possibility of early discharge under chapter 906 based upon a determination of the parole board that the person "is able and willing to fulfill the obligations of a law-abiding citizen without further supervision." Iowa Code § 906.15; *see also id.* ("If a person has been sentenced to a special sentence under section 903B.1 or 903B.2, the person may be discharged early from the sentence in the same manner as any other person on parole."). In this case, that would be as soon as five and one-half years from Graham's discharge date in April 2015. *See id.* ("[A] person convicted of a violation of section 709.3, 709.4, or 709.8 committed on or with a child . . . shall not be discharged from parole until the person's term of parole equals the period of imprisonment specified in the person's sentence, less all time served in confinement."). This is not the rare sentence that is so grossly disproportionate as to warrant further review, and we need not reach the other two prongs of the *Solem* test. *See Oliver*, 812 N.W.2d at 653.

*B. Sex Offender Registry: Cruel and Unusual Punishment*[10]

Similar to his arguments regarding the section 903B.1 special sentence, Graham claims mandatory lifetime sex offender registration is cruel and unusual

---

[10] The State argues Graham did not preserve error on his sex offender registration claim because he merely requested that the court modify the 2000-foot rule. Because Graham contends the statute is inherently illegal and constitutes cruel and unusual punishment, we will address the claim on the merits even though it was not raised in the district court. *See Bruegger*, 773 N.W.2d at 869.

punishment under both the federal and state constitutions because he was a juvenile at the time of the offense and seeks to extend the holdings of *Miller*, *Null*, and *Lyle*. Graham also asks us to overturn existing precedent finding the registry statute was not punitive and, therefore, could not constitute cruel and unusual punishment. *See Harkins*, 786 N.W.2d at 507–08 (concluding the mandatory lifetime registration restrictions under chapter 692A is not "punitive," and, even when combined with the special sentence under section 903B.1, does not violate the prohibition against cruel and unusual punishment found in article I, section 17); *Sallis*, 786 N.W.2d at 517 (same).

Current case law does not require a district court to consider the *Miller* factors before requiring a juvenile defendant to comply with the lifetime sex offender registration requirements. For the same reasons as articulated above, we do not see it as the role of our court in this case to extend the line of juvenile sentencing cases in that manner. Additionally, our courts have repeatedly held the mandatory lifetime registration restrictions under chapter 692A are not "punitive" and, therefore, cannot constitute cruel and unusual punishment. Again, we leave the task of overruling precedent to our supreme court. *See, e.g.*, *Eichler*, 83 N.W.2d at 578.

Graham further argues the mandatory lifetime sex offender registration requirement is grossly disproportionate as applied to him under article I, section 17 of the Iowa Constitution. As discussed above, the record shows Graham engaged in a sex act with a thirteen-year-old who was not his wife. Graham pled guilty to third-degree sexual abuse, pursuant to Iowa Code section 709.4(2)(b). Mandatory lifetime sex offender registration is specifically imposed and

authorized by statute for the offense Graham committed. The sentence is not grossly disproportionate as applied to the facts and circumstances of this case.

*C. Due Process Challenges*

Graham also challenges Iowa Code section 903B.1 and the sex offender registration requirements of chapter 692A on seemingly both procedural and substantive due process grounds. *See* U.S. Const. amends. V, XIV; Iowa Const. art. I, § 9. The State argues Graham failed to preserve his due process claims because they were not raised before the district court. Graham replies his claims are properly before the court because he characterizes them as a challenge to an illegal sentence. He contends he is not challenging the procedures resulting in his conviction, but rather the imposition of the mandatory lifetime special sentence and the mandatory lifetime sex offender registration, and the district court should not have imposed the sentences on him because he was a juvenile at the time of the offense.

Although an illegal sentence may be corrected at any time under Iowa Rule of Criminal Procedure 2.24(5)(a), a sentence is "illegal" under rule 2.24 if it is not authorized by statute. *See Tindell v. State*, 629 N.W.2d 357, 359 (Iowa 2001). The special sentence of lifetime supervision is authorized by section 903B.1, and the lifetime registration requirements are authorized under chapter 692A. Graham, in making his due process arguments, is not challenging an illegal sentence; instead, he is challenging a sentence he alleges was not legally imposed.[11] A challenge that a sentence was illegally imposed is a procedural

---

[11] As previously discussed, Graham asserts a separate challenge to the constitutionality of the special sentence and registration requirements under the Eighth Amendment and

error that must be raised at the earliest opportunity after the grounds for the objection become apparent. *See id.* ("[Rule 2.24(5)(a)], and our cases, allow challenges to *illegal* sentences at any time, but they do not allow challenges to sentences that, because of procedural errors, are illegally *imposed.*"). Because Graham's due process claims are being raised for the first time on appeal, they are not properly before us for review. *See id.* (holding the defendant's claim of procedural error was precluded by the rules of error preservation when not raised in the district court below); *see also State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008) ("Issues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal." (citation omitted)); *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

## IV. Conclusion

We decline Graham's request to extend the holdings of the recent juvenile sentencing decisions to cases involving juvenile offenders who are serving sentences of lifetime supervision or are subject to the lifetime restrictions of the sex offender registry. We further find the mandatory lifetime special sentence and mandatory lifetime registration requirements are not grossly disproportionate to the offense of sexual abuse in the third degree as applied to Graham.

---

article I, section 17, which is allowed under *Bruegger*. *See* 773 N.W.2d at 871 (allowing a categorical challenge to the constitutionality of a sentence under the cruel and unusual punishment clauses targeting "the inherent power of the court to impose a particular sentence").

Additionally, we find Graham's due process claims are not preserved for our review.

**WRIT ANNULLED.**